**Samuel FRIEDMAN, Appellant,**

v.

**BACHE HALSEY STUART SHIELDS, INC., et al.**

**Samuel FRIEDMAN, Appellant,**

v.

**BACHE HALSEY STUART SHIELDS, INC., et al.**

**Nos. 83–1249, 83–1250.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 9, 1983.

Decided July 3, 1984.

John D. Seiver, Washington, D.C., with whom Alan Raywid, Washington, D.C., was on the brief, for the appellant.

Helen G. Blechman, Atty., Commodity Futures Trading Com'n, Washington, D.C., with whom Kenneth M. Raisler, Acting Gen. Counsel, Commodity Futures Trading Com'n, Washington, D.C., was on the brief, for the appellee, Commodity Futures Trading Com'n.

Ruth Eisenberg, Atty., S.E.C., Washington, D.C., with whom Daniel L. Goelzer, Gen. Counsel, Linda Fienberg, Associate Gen. Counsel, and Benjamin Greenspoon, Deputy to the Associate Gen. Counsel, Washington, D.C., were on the brief, for appellee, S.E.C.

Before WILKEY and STARR, Circuit Judges, and JAMES E. DOYLE,* Senior District Judge for the Western District of Wisconsin.

Opinion for the Court filed by Senior District Judge JAMES E. DOYLE with whom Circuit Judge WILKEY concurs.

Dissenting opinion filed by Circuit Judge STARR.

JAMES E. DOYLE, Senior District Judge:

Samuel Friedman appeals an order of the United States District Court for the District of Columbia denying his motions to compel the Commodities Future Trading Commission (CFTC) and the Securities and Exchange Commission (SEC) to comply with two related subpoenas. We hold that the district court's grounds for denying the subpoenas were erroneous, vacate the judgment, and remand for further proceedings.

## I.

Friedman was a party to two civil lawsuits arising out of the silver crisis.[1] The

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. He is plaintiff in an Illinois action *Friedman v. Bache Halsey Stuart Shields, Inc., Bache Group, Inc., Board of Trade of the City of Chicago, Nelson Bunker Hunt, William Herbert Hunt and Lamar Hunt,* No. 80–C–1111 (U.S.D.C., N.D.Ill.) to recover a $500,000 loss in 1979 silver futures trading. On February 17, 1983, the defendant Hunt brothers were dismissed by stipulation. On September 6, 1983, defendants Bache Group and Bache Halsey Stuart Shields, Inc. were dismissed. The remaining defendant in the Illinois action is the Chicago Board of Trade

price of silver futures rose and fell dramatically in 1979–80. SEC investigated this unusual fluctuation and published its findings in October 1982. As the agency primarily responsible for regulation of the commodity futures market, CFTC initiated its own investigation to determine whether there had been violations of the federal commodities laws. The CFTC investigation is not complete and no report has been published.

On January 26, 1983, a Wednesday, Friedman served a *subpoena duces tecum et ad testificandum,* issued by the United States District Court for the District of Columbia, on the general counsel of CFTC, requiring appearance on Wednesday, February 2, 1983. The subpoena demanded production of the following documents for inspection and copying:

(a) All transcripts of the testimony which refers or relates to or was given in connection with the investigation of the activity in the silver and silver futures markets in 1979–80 by the Commodity Futures Trading Commission.

(b) All indices of documents produced in connection with the investigation referred to above.

On the same date Friedman served a *subpoena duces tecum et ad testificandum,* issued by the United States District Court for the District of Columbia, on the Secretary of SEC, also requiring an appearance on February 2, 1983. The subpoena demanded production of the following documents for inspection and copying:

(a) Transcripts of testimony given by (1) Nelson Bunker Hunt, (2) William Herbert Hunt, (3) Lamar Hunt, (4) James Parker, and (5) Charles Mercer in connection with the investigation of the activity in the silver and silver futures markets in 1979–1980, conducted by the Securities and Exchange Commission ("SEC") Investigation No. HO–1233.

(b) All indices of documents produced in connection with Investigation No. HO–1233.[2]

On Monday, January 31, 1983, pursuant to Rule 45(d), Fed.R.Civ.P., the general counsel of CFTC served a notice of objection to the CFTC subpoena on the grounds that:

[T]he [general counsel] to whom the subpoena is directed, does not have custody or control of any documents which could be deemed to be responsive to the instant subpoena .... Second, ... Section 222(5) of the Futures Trading Act of 1982[3] ... allows the Commission to disclose information in its possession pursuant to a subpoena, ... *only if:* (1) a copy of the subpoena ... has been mailed to the last known home or business address of the person who submitted the information that is the subject of the subpoena; and (2) at least fourteen (14) days have

(CBOT). The two subpoenas in dispute bore the title of this Illinois action and stated that the depositions were to be taken in this Illinois action.

He was a defendant in a Florida state court action, *Bache Halsey Stuart Shields, Inc. v. Samuel Friedman,* No. 80–4340(17), Circuit Court of the Eleventh Judicial District of Florida, Dade County, which was an action to recover the deficit balance in Friedman's account resulting from losses in 1979 silver futures trading. The Florida action was dismissed in its entirety on September 27, 1983.

Friedman's counsel represented to the district court that he intended to use in the Florida state court action, as well as in the Illinois action, the documents sought by the CFTC and SEC subpoenas.

**2.** Part (a) has been modified to demand production of an index of all witnesses who testified in the SEC's investigation, and not transcripts of

testimony. Friedman has obtained transcripts of the testimony of the Hunts and of Charles Mercer directly from those parties.

**3.** Section 222(5) of the Futures Trading Act of 1982, 7 U.S.C. § 12(f) (Supp.1983) provides in pertinent part:

The Commission shall disclose information in its possession pursuant to a subpoena or summons only if—

(1) A copy of the subpoena or summons has been mailed to the last known home or business address of the person who submitted the information that is the subject of the subpoena or summons

....

(2) At least fourteen days have expired from the date of such mailing of the subpoena or summons, or such other notice.

expired from the date of such mailing of the subpoena .... Further, ... the subpoena on its face only seeks information which is protected from disclosure by the law enforcement investigatory files privilege .... Finally, ... Section 8(a) of the Commodity Exchange Act[4] ... generally prohibits the Commission from disclosing such confidential information.

On Tuesday, February 1, 1983, pursuant to Rule 45(d), Fed.R.Civ.P., the secretary of SEC served an objection to the subpoena on the ground that the "disclosure of the requested documents ... would interfere with an ongoing investigation being conducted by the Commodities Futures Trading Commission."

On Wednesday, February 2, 1983, pursuant to Rule 45, Fed.R.Civ.P., Friedman filed motions in the United States District Court for the District of Columbia to enforce both subpoenas. Accompanying these motions was a request for an expedited briefing schedule (five days) and hearing (the seventh day). The expressed reasons for requesting these accelerated procedures were the imminence of trial set for April 7, 1983, at Bache's insistence, in Bache's action against Friedman in the Florida state court and nine depositions scheduled in February 1983, commencing February 9, 1983, in the lawsuit in the Illinois district court.

On Friday, February 4, 1983, the district court heard oral argument on the enforcement motions. The court requested a brief from CFTC by Tuesday, February 8, 1983, "supporting [its] position that [the general counsel] is not the appropriate officer to be subpoenaed, and telling the court why, and secondly, on [its] claim of privilege as being

appropriately raised before the court under Black versus Sheraton in this circuit." (Tr. 26) On February 8, 1983, CFTC submitted its brief. On the same date Friedman submitted a supplemental brief in support of his motion. SEC was not required to, and did not submit a brief.

As of February 9, 1983, the documents described in the subpoenas had not been examined, one by one, by responsible members or officers of CFTC, in response to the subpoenas, to determine whether, in the opinion of CFTC, each particular document is relevant to the subject matter of the Illinois lawsuit or is privileged, within the meaning of Fed.R.Civ.P. 26(b)(1). Counsel for the CFTC represented to the district court that as of February 8, 1983, more than 40 persons had testified in CFTC's silver investigations, more than 6000 pages of their testimony had been transcribed, the indices of all documents compiled identified over 60,000 pages of documents (located in four cities), and the indices compiled totalled over 1000 pages in length. Also, counsel for CFTC represented, on information provided by SEC counsel, that about 200,000 pages of material had been compiled in SEC's investigation, the combined length of two sets of indices to these documents was 200 pages and a third set of indices was on tape and untranscribed.

On February 9, 1983, the district court entered its order denying Friedman's motion to enforce each of the two subpoenas.

## II.

The entire operative portion of the order appealed from reads: "[P]laintiff's motion to compel [is] denied for failure to (1) show

---

**4.** Section 8(a) of the Commodity Exchange Act, 7 U.S.C. § 12(a) (Supp.1983), as amended reads:
For the efficient execution of the provisions of this Act, and in order to provide information for the use of Congress, the Commission may make such investigations as it deems necessary to ascertain the facts regarding the operations of boards of trade and other persons subject to the provisions of this Act. The Commission may publish from time to time the results of any such investigation and such general statistical information gathered there-

from as it deems of interest to the public: *Provided,* That except as otherwise specifically authorized in this Act, the commission may not publish data and information that would separately disclose the business transactions or market positions of any person and trade secrets or names of customers: Provided further, That the Commission may withhold from public disclosure any data or information concerning or obtained in connection with any pending investigation of any person.

the unavailability of the materials from persons or businesses that have an interest or play a role in the underlying civil action, (2) establish that Section 8(a) of the Commodities Exchange Act, as amended, does not bar disclosure of the requested materials in a pending enforcement case, and (3) establish that Section 522(5) [sic] of the Futures Trading Act does not bar enforcement of a subpoena on less than 14 days notice." We will express below our awareness of the time constraints by which the district court considered itself bound. They explain the brevity of the challenged order. That brevity requires us, however, to exercise a degree of intuition in amplifying the stated grounds, particularly the first. We address the three grounds in sequence.

A. *Need: unavailability from alternative sources.*

 A showing of relevance can be viewed as a showing of need; for the purpose of prosecuting or defending a specific pending civil action, one is presumed to have no need of matter not "relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). But it is highly unlikely that relevance was a factor in the district court's decision. While it is true this or that specific document in the CFTC and SEC silver investigation files may not be relevant to the subject matter of *Friedman v. Board of Trade of the City of Chicago,* No. 80–C–1111 (N.D.Ill.),[5] it seems clear that the bulk of the content of those investigation files is relevant. Neither CFTC nor SEC appears seriously to challenge this proposition.

Of course, the district court was well aware that since the 1970 amendment to Rule 34, a showing of good cause is not a general requirement for the discovery of

documents under that rule or, by analogy, under Rule 45. 4A J. Moore, Moore's Federal Practice § 34.02[2.–2] (2d ed. 1983).

 We are confident that the district court's reference to availability of the materials from alternative sources was made exclusively in the context of the claim of privilege raised by CFTC and SEC.[6] There surely is such a thing as a qualified common-law privilege,[7] within the meaning of Fed.R.Civ.P. 26(b), for law-enforcement investigatory files. *Black v. Sheraton Corp. of America,* 564 F.2d 531, 541–542 (D.C. Cir.1977). Also, when the existence of such a conditional privilege is established, there is a need to balance the public interest in nondisclosure against the need of the particular litigant for access to the privileged information. *United States v. Reynolds,* 345 U.S. 1, 11, 73 S.Ct. 528, 533, 97 L.Ed. 727 (1953); *Black v. Sheraton Corp. of America,* 564 F.2d at 545–547. Whether the materials are available from other sources is a factor in determining the degree of the litigant's need to obtain it from the governmental agency or officer claiming the privilege. Finally, it was not clearly erroneous for the district court to conclude that as of February 9, 1983, Friedman had failed to make a strong showing of unavailability from alternative sources.

 The major error we perceive in the district court's order, however, is that the existence of a qualified law-enforcement investigatory files privilege as to all of the subpoenaed documents had not been sufficiently established by CFTC so as to support wholesale and final rejection of Friedman's motion to compel compliance.

The party claiming privilege has the burden to establish its existence. *Black v. Sheraton Corp. of America,* 564 F.2d 531,

---

5. We endeavor to preserve our awareness of the context of two underlying lawsuits with many parties, within which context the district court ruled on February 9, 1983. However, for purposes of further proceedings arising from the subpoenas, only Friedman's action in Illinois, and only the surviving defendant in that action, the Board of Trade, need be considered.

6. Hereinafter, we will refer only to the contentions of CFTC, without repetition of the fact that SEC has joined in CFTC's claim of privilege as to SEC's silver investigation file.

7. We consider below whether there is a statutory bar to disclosure: Section 8(a) of the Commodities Exchange Act.

547 (D.C.Cir.1977); *see also Robinson v. Magovern*, 83 F.R.D. 79 (W.D.Pa.1979). It is doubtful CFTC had met the very threshold requirement of presenting the claim properly. It will not be considered unless presented in a deliberate, considered and reasonably specific manner:

> [G]overnmental privilege[s] must be formally asserted and delineated in order to be raised properly . . . .
>
> . . . .
>
> The claiming official must "have seen and considered the contents of the documents and himself have formed the view that on grounds of public interest they ought not to be produced" and state with specificity the rationale of the claimed privilege . . . .
>
> . . . .
>
> Formally claiming a privilege should involve specifying which documents or class of documents are privileged and for what reasons, especially where the nature of requested documents does not reveal an obviously privileged matter.

*Kerr v. United States Dist. Ct. for North. Dist. of Cal.*, 511 F.2d 192, 198 (9th Cir. 1975) (cites omitted) (quoting *United States v. Reynolds*, 345 U.S. 1, 8 n. 20, 73 S.Ct. 528, 532 n. 20, 97 L.Ed. 727 (1953)). *See United States v. Winner*, 641 F.2d 825, 831–832 (10th Cir.1981); *United States v. O'Neill*, 619 F.2d 222, 225–227 (3rd Cir. 1980). CFTC had made a generalized claim that the requested documents are protected by a common-law law-enforcement investigatory files privilege.[8] CFTC's attorney in

the district court had suggested disclosure would reveal law enforcement techniques and sources: disclose strategy, procedures, and direction of the investigation, forewarn suspects, deter witnesses from providing candid testimony, invite others to seek discovery. However, the files had not been examined for this purpose by responsible members or officers of CFTC. No specific documents or classes of documents had been identified.

Until the claim of privilege has been presented to a district court with appropriate deliberation and precision and the duty of the demanding party to show his or her need for disclosure has thus been triggered,[9] and until that duty has then been discharged by the demanding party, the district court is not equipped to engage in the task of identifying and weighing the competing interests. When, as here, the privilege claimed is qualified, not absolute, the process of identification and weighing cannot be avoided. Specifically with respect to the common-law law-enforcement investigatory files privilege, many factors must be addressed. A helpful list appears in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D.Pa.1973):

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclo-

---

**8.** The dissent observes that in addition to the common-law law-enforcement investigatory files privilege, CFTC contended that two other privileges barred production (the privilege for intragovernmental deliberative documents and the privilege for official information or required reports), and *that on remand CFTC remains free to assert at least the privilege for intragovernmental deliberative documents.* In *Jordan v. United States Dept. of Justice*, 591 F.2d 753, 779 (D.C.Cir.1978), we were emphatic in our rejection of the assertion of privileges piecemeal from time to time in the course of litigation. We note that in its written submission to the district court, CFTC contended principally for the privilege for law-enforcement investigatory files, adverted very briefly to the existence of a

privilege for intragovernmental deliberative documents, and made no mention of a privilege for official information or required reports. It will be for the district court to determine on remand, in light of our ruling in *Jordan*, whether CFTC remains free to assert any privilege other than that for law-enforcement investigatory files.

**9.** Suggestions to the contrary appearing in *Freeman v. Seligson*, 405 F.2d 1326, 1336–40 (D.C. Cir.1968) must be viewed in the context of the threshold burden of showing good cause for the discovery of documents which was part of Rule 34 and, by analogy, Rule 45, Fed.R.Civ.P. prior to the 1970 amendments.

sure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

█ Departure from the well-established sequence of burdens of going forward in qualified privilege disputes is not justified by the fact that the Friedman subpoenas expressly describe their target as law-enforcement investigatory files. There is a considerable variety of law-enforcement investigatory files and there is a considerable variety of information within particular law-enforcement investigatory files. CFTC represented to the district court that much of the content of its silver investigation files is in the public domain, and it suggested that these non-confidential documents would be available to Friedman upon request under the Freedom of Information Act. That the qualified privilege is not claimed as to the entire files only adds to the necessity that the process of adjudication of the privilege begin with a deliberate and reasonably specific delineation of the claim by CFTC.

With the proceeding in its February 9, 1983 posture, decision on the merits on any ground and in either direction was premature, with respect to the claim of a common-law privilege for law-enforcement investigation files.

## B. Section 8(a) of the Commodities Exchange Act (CEA)

It would not have been premature to deny Friedman's motion on its merits on the basis that Section 8(a) of the Act [10] flatly bars Friedman from access to the CFTC and SEC silver investigation files. But it would have been erroneous. The district court's second stated ground for its order was that Friedman had failed to "establish that Section 8(a) ... does not bar disclosure of the requested materials in a pending enforcement case ...." We take this to be a holding that Section 8(a) does bar disclosure.

█ Although Section (8) allows CFTC to "withhold from public disclosure any data or information concerning or obtained in connection with any ‚pending investigation of any person" (7 U.S.C. § 12(a) (Supp. 1983)), this protection does not apply to discovery requested pursuant to rules 26 and 45 Fed.R.Civ.P. "[L]imited disclosure in judicial proceedings, carefully curtailed by judicious use of protective orders authorized by Rule 30, is not a publishing barred by this section." *Freeman v. Seligson,* 405 F.2d 1326, 1348 (D.C.Cir.1968). *Freeman* arose before an amendment to § 8(a) added a shelter from publication for investigatory information. It addressed statutory language in the original Act protecting business transactions, trade secrets and names of customers. But the same considerations are operative to statutory shields for both types of information.

*Freeman* stressed the importance of the litigants' and courts' access to relevant information, a "foundation for the achievement of justice in individual lawsuits." *Id.* Congress must "clearly" and "strongly" indicate its intent to contradict this broad objective favoring disclosure in judicial proceedings.

[I]n other instances where Congress has thought it necessary to protect against court use of records it has expressly so provided by specific language. We see no warrant for inferring that Congress has so elevated the interest[s] [identified in § 8(a)] that it gives them dominance over basic rules of judicial administration, especially when it is taken into ac-

10. See note 4, *supra.*

count that courts can and do carefully confine disclosures as narrowly as possible.

*Id.* at 1351.

Statutes insulating information from publication are aimed at the broadcasting of sensitive information to the general populace; the statutes are not intended to enjoin the limited kind of disclosure encountered in judicial proceedings. The exemptions provided in the Freedom of Information Act (FOIA) are comparable to those in § 8(a) of the CEA in that both offer refuge from publication but not from court-supervised discovery. The relation between discovery procedures and FOIA exemptions is well-established. *See, e.g., Verrazzano Trading Corp. v. United States,* 349 F.Supp. 1401, 1403 (Cust.Ct.1972). The § 8(a) protections parallel that relationship.

■ If information in government documents is exempt from disclosure to the general public under FOIA, it does not automatically follow the information is privileged within the meaning of rule 26(b)(1) and thus not discoverable in civil litigation. *Firestone Tire & Rubber Co. v. Coleman,* 432 F.Supp. 1359 (N.D.Ohio 1976). The FOIA acts as a "floor" when discovery of government documents is sought in the course of civil litigation. Though information available under the FOIA is likely to be available through discovery, information unavailable under the FOIA is not necessarily unavailable through discovery. J. Loran, *Information Disclosure in Civil Actions: The Freedom of Information Act and Federal Discovery Rules,* 49 Geo.Wash.L.Rev. 843, 849 (1981).

The FOIA furthers the public's general right to know and ensures government accountability. Discovery discourages unfair surprise and delay at trial. In the FOIA context, the requesting party's need for the information is irrelevant; the most urgent need will not overcome an applicable FOIA exemption. In the discovery context, when qualified privilege is properly raised, the litigant's need is a key factor. Whether the information is disclosed depends on the

relative weight of the claimant's need and the government's interest in confidentiality. *Id.* at 851–2. It is unsound to equate the FOIA exemptions and similar discovery privileges. We find it equally untenable to equate the § 8(a) protections from publication and similar qualified privileges from discovery.

■ Nevertheless, statutory publication shelters may have some application to discovery. These protected interests reflect a congressional judgment that certain delineated categories of documents may contain sensitive data which warrants a more considered and cautious treatment. In the context of discovery of government documents in the course of civil litigation, the courts must accord the proper weight to the policies underlying these statutory protections, and to compare them with the factors supporting discovery in a particular lawsuit. *Id. at 852–3; see also Black v. Sheraton Corp. of America,* 564 F.2d 531, 547 (D.C.Cir.1977).

*In camera* inspection of allegedly privileged documents and protective orders, when appropriate, are accepted procedures in this circuit, at least where as here military and diplomatic secrets are not at issue. *See, e.g., Committee for Nuclear Responsibility, Inc. v. Seaborg,* 463 F.2d 788, 794 (D.C.Cir.1971).

> The courts can limit, and in actual practice do limit, the persons having access to information, their freedom to discuss the information to which they are given access, and the uses to which the information may be put. No great outcry has arisen that information thus restricted has been leaked, or put to improper uses, by attorneys who are sworn officers of the court.

*Freeman,* 405 F.2d at 1350. The potential harm to the government is minimal when appropriate precautions are taken. Consequently, statutes prohibiting general publication do not prohibit judicial discovery. We hold § 8(a) of the CEA does not automatically bar disclosure of the requested materials, but that the district court may

consider § 8(a) as congressional underscoring of the government's interest in protecting sensitive investigatory information.

C. *Section 222(5) Futures Trading Act (FTA)*

The district court held. Friedman had failed to "establish that Section 222(5) of the Futures Trading Act does not bar enforcement of a subpoena on less than 14 days notice."

 Section 222(5) requires CFTC to notify contributors of information in its possession fourteen days prior to disclosure of that information. 7 U.S.C. § 12(f) (Supp.. 1983). It does not create an absolute statutory privilege or bar enforcement of the subpoena; it only delays disclosure while notification is accomplished.

 Friedman contends notification is not required for the SEC documents, which are not in CFTC's possession. We agree. "The Commission [CFTC] shall disclose information in its possession...." 7 U.S.C. § 12(f) (Supp.1983). The Act specifically does not supersede or limit the jurisdiction conferred on the Securities and Exchange Commission. 7 U.S.C. § 2 (Supp.1983). SEC is not affected by the notification requirements of § 222(5) and CFTC is required to notify only those parties who have contributed information which is presently in CFTC's possession.

 We reject Friedman's contention that § 222(5) is inapplicable to indices to documents. It is true that CFTC's indices themselves are not contributed by third parties. They are descriptions of material contributed by others and they reveal those contributors' identities. Consideration of fairness and of opportunity to assert individual objections to disclosure apply, therefore, to the indices as well as to the underlying documents.[11]

 Contrary to Friedman's contention, section 222(5) is applicable to this lawsuit,

though it did not become effective until January 11, 1983.[12] The date of service of the subpoenas, January 26, 1983, is the operative date in the present case.

Upon reviewing Friedman's requests and CFTC's privilege claims, the district court must order CFTC to comply with the requirements of § 222(5) of the Futures Trading Act before disclosing those CFTC documents, if any, ultimately judged relevant and not privileged.

### III

 The district court was confronted by an aggressive litigator who made extreme demands upon the human resources of CFTC, SEC, and the United States District Court for the District of. Columbia.

In this opinion we have remarked upon the brevity of the district court's order. We could not be more keenly aware of the reasons for that brevity. The conscientious and diligent district judge obviously considered himself bound to decide on the merits, forthwith, Friedman's motion to compel compliance as Friedman was urging him to do. We surmise that the court's sense of urgency was less a response to the prompting of an aggressive litigant than to its sense of obligation to the federal court in Illinois and the state court in Florida.

We have remarked upon the inadequacy of the CFTC and SEC claims of privilege as of February 9, 1983, the date of the district court's decision. We could not be more keenly aware of the reasons for that inadequacy. We have noted CFTC's explicit representations to the district court that it was prepared to embark upon the task of preparing and presenting to the court a deliberate and reasonably precise invocation of its claim of qualified privilege, but that the task could not be performed overnight, so to speak.

---

**11.** Third party contributors may be permitted to intervene for the purpose of asserting any privilege they may hold with respect to the subpoenaed information. *Freeman,* 405 F.2d at 1351–2; 17 C.F.R. § 145.9 (1983).

**12.** Section 239 of the FTA provides, "This Act shall be effective upon the date of enactment of this Act." 7 U.S.C. § 2 note (Supp.1983).

We have remarked as well upon the aggressive posture of movant Friedman in the district court.[13] He contended at the time that it was justified on two grounds. One was that in the lawsuit in the federal court in Illinois in which he was plaintiff, he had scheduled depositions only a few days off. The second was the imminence of the April 11, 1983 trial in the Florida state court lawsuit in which he was a defendant. The first justification is unappealing, although it cannot be evaluated properly without considerably more information about the procedural history of the lawsuit in the federal court in Illinois. But the second justification cannot be rejected as readily as it is rejected in the dissenting opinion in this court. CFTC counsel represent to us that some time prior to February 2, 1983, when he filed his motions to compel in the federal district court in the District of Columbia, Friedman had moved to stay the proceedings against him in the Florida state court, and that the stay was granted on March 18, 1983. As of January 26, 1983, through February 9, 1983, Friedman presumably had little control over the rate of progress in the Florida litigation. He would have been open to criticism, perhaps fatal handicaps, if in that case the trial judge had considered Friedman delinquent in seeking discovery of documents needed for his defense. All Friedman could do was seek the CFTC and SEC documents as fast as he could. Had the federal district court for the District of Columbia slowed the pace in the proceeding to enforce the CFTC and SEC subpoenas, Friedman could have informed the Florida court that despite his best efforts, the matter of the discovery of the documents was in the hands of the federal court in the District of Columbia and that their availability or unavailability awaited that court's ruling.[14]

It was up to the federal district court in the District of Columbia to determine the time within which CFTC and SEC could reasonably be expected to present properly to the court their claims of privilege, Friedman could be heard in response, and the court could have made the usual amount of inspection of the documents in dispute. Accommodation among courts within the federal judicial system and within the state judicial system and between the two systems requires considerable sensitivity and cooperation. However, each court must insist upon the minimal time necessary to adequate presentation of the issue before it and to just resolution of the issue. In the present case, the district court did not provide CFTC and SEC sufficient time properly to present the claim of privilege. But it proceeded, on the basis of an inadequate presentation of the claim of privilege, to decide that the claim was valid. This decision on the merits against the movant Friedman was error. We appreciate that there is room for disagreement concerning the degree of justification for appellant Friedman's aggressiveness in the district court. But even if we were more disapproving of that aggressiveness than we are, we could not agree that the response should take the form of appellate affirmance of an erroneous district court ruling on the law, carefully developed over the years by this and other courts, concerning the threshold requirements for proper presentation of a claim of privilege.

## IV.

The order appealed from is reversed and vacated, and the case is remanded for further proceedings consistent with this opinion.

STARR, Circuit Judge, dissenting:

The majority today vacates a District Court order denying Samuel Friedman's

---

**13.** In so describing movant's posture, we imply nothing whatever, of course, concerning the merits of this discovery dispute or of the suit in the federal court in Illinois. Indeed, his efforts seem consonant, superficially, at least, with those of the CFTC and SEC as to the silver crisis.

**14.** The dissenting opinion seems to fault appellant Friedman for litigating the subpoena questions on appeal for over a year. He is not responsible for the length of time this court of appeals has required to hear and decide the matter.

motions to compel the Commodities Futures Trading Commission ("CFTC") and the Securities and Exchange Commission ("SEC") to comply with two extraordinarily broad subpoenas *duces tecum et ad testificandum*. Because I believe that the District Court was entirely correct in refusing to compel compliance with these subpoenas in the specific and extraordinary circumstances of this case, I respectfully dissent.

## I

The majority's opinion details the events that led to the District Court's order denying appellant's motions to compel. While it is thus unnecessary to repeat those facts, our pausing to look at the salient events highlights the extraordinarily furious pace at which appellant conducted this litigation. For the facts convincingly show that, under the circumstances as presented to the District Judge, the action which he took was entirely correct.

The majority now overturns the District Court only by blinking at the way Mr. Friedman framed this dispute. The more one examines the facts, however, the more one is led inexorably to the conclusion that the majority is sanctioning run-away, shotgun, third-party discovery that placed the agencies and the District Court under an unreasonable, adumbrated schedule.

Mr. Friedman was a party to two civil suits involving events during the "Silver Crisis of 1980." Majority Opinion 1338 & n. 1. On January 26, 1983, Mr. Friedman served a subpoena on the General Counsel of the CFTC seeking immediate production of investigatory documents. The terms of that request merit our careful perusal: it included "[a]ll transcripts of testimony which refers or relates to or was given in connection with the investigation of the activity in the silver and silver futures markets in 1979–80 by the Commodity Futures Trading Commission" and "all indices of documents produced in connection with the [silver] investigation." Appendix ("App.") 11. Mr. Friedman had another agency in his sights as well. On the same day, he served a subpoena on the Secretary of the SEC seeking transcripts of testimony given by certain individuals in connection with the SEC investigation,[1] and "[a]ll indices of documents produced in connection with the [silver investigation]." App. 47.

Both subpoenas sought production of the documents on February 2, 1983, literally seven days after service of the subpoenas. The documents sought were, to put it mildly, voluminous. The CFTC had compiled over 6,000 pages of testimony from 40 persons and a 1,000 page index to some 60,000 pages of documents. The SEC's documents comprised approximately 200,000 pages and were maintained in four different cities. Maj. Op. 1340–1341; App. 199–200. *Thus, on one week's notice, appellant sought literally hundreds of thousands of pages of documents from two agencies—documents that concededly were contained in the law enforcement investigatory files of the agencies—for use in civil suits to which the agencies were not parties.*[2]

Not surprisingly, the CFTC objected to the subpoena. Its opposition was filed on

---

**1.** The request for the SEC transcripts was subsequently modified because Mr. Friedman obtained them directly from the parties that testified. Maj. Op. n. 2.

**2.** Mr. Friedman stated in his motions to compel that he needed these documents "to complete discovery and prepare for trial in Florida in April." App. 7, 43. Trial date had been set for April 7, 1983. *Id.* It is entirely unclear why Mr. Friedman sat back until the eleventh hour before seeking these documents. He had filed suit against Bache Halsey Stuart Shields, Inc. ("Bache"), the Hunt brothers, and the Chicago Board of Trade ("CBOT") in March 1980 in federal district court for the Northern District of Illinois, for losses sustained on the silver markets as a result of the Silver Crisis. Some time later, Bache brought suit against Mr. Friedman in Florida state court seeking recovery of deficits in his accounts. App. 42–43. Since the litigation surrounding Mr. Friedman's losses on the silver markets had been underway for this period of time, it is exceedingly difficult to divine why Mr. Friedman could not have sought this information earlier, thus sparing himself and the courts the strain of last second, frantic efforts to obtain obviously important information on the very eve of trial. Mr. Friedman's counsel attempted lamely to justify the delayed requests, stating "we perhaps naively expected not to receive any opposition." App. 75. Such an expectation, however, was clearly not well-

January 31, 1983, five days after service of the subpoena. App. 13–20. The SEC objected on February 1, 1983. App. 52–53. On the next day, Mr. Friedman filed motions to compel, seeking an expedited argument schedule. App. 8, 44. The District Court accommodated this request and heard oral argument two days later on February 4, 1983. App. 70–106. Despite the urging of Mr. Friedman's counsel to decide the motions *without briefing,* the District Court requested briefing by all parties on February 8, 1983. App. 74. The District Court, in an effort to determine the issues in an orderly but prompt manner, issued its decision denying enforcement of the subpoenas on the next day, February 9, 1983. App. 270–71.

## II

The District Court denied appellant's motions to compel on three grounds, ruling that

> grounded in the law, given the fact that Mr. Friedman sought the law enforcement files in an *ongoing* investigation. *Cf. Reynolds v. United States,* 345 U.S. 1, 11, 73 S.Ct. 528, 533, 97 L.Ed. 727 (1953) (suggesting that failure to pursue alternative means of obtaining information "might have given the respondents the evidence to make out their case without forcing the showdown of privilege").

**3.** In addition to the law enforcement investigatory files privilege, the CFTC and SEC argued that two other privileges barred production of the documents sought in this case. First, they contended that the governmental privilege for intragovernmental deliberative documents protected the documents from disclosure. *See McClelland v. Andrus,* 606 F.2d 1278, 1286–87 (D.C.Cir.1979) (recognizing governmental privilege precluding disclosure of official information that would be injurious to the consultative functions of the government); *Association for Women in Science v. Califano,* 566 F.2d 339, 343 (D.C.Cir.1977) ("*AWIS*"); *Machin v. Zuckert,* 316 F.2d 336, 339 (D.C.Cir.), *cert. denied,* 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963); *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318, 324–26 (D.D.C.1966), *aff'd mem. sub nom. V.E.B. Carl Zeiss, Jena v. Clark,* 384 F.2d 979 (D.C.Cir.), *cert. denied,* 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967). The agencies also contended that the official information or required reports privilege, which recognizes that the Government and citizens have a shared privilege in certain types of confidential information provided to the Government by citizens. *See Baldrige v. Shapiro,* 455 U.S. 345, 360, 102

plaintiff's motion to compel [is] denied for failure to (1) show the unavailability of the materials from persons or businesses that have an interest or play a role in the underlying civil action, (2) establish that Section 8(a) of the Commodities Exchange Act, as amended, does not bar disclosure of the requested materials in a pending enforcement case, and (3) establish that Section 522(5) [sic] of the Futures Trading Act does not bar enforcement of a subpoena on less than 14 days notice.

App. 270–71. The majority correctly views the first basis of the District Court's order as referring to the qualified common-law privilege for law enforcement investigatory files rather than to relevance. Maj. Op. 1340–1341.[3]

Under the broad sweep of Rule 26(b)(1) of the Federal Rules of Civil Procedure, a

> S.Ct. 1103, 1112, 71 L.Ed.2d 199 (1982); *AWIS,* 566 F.2d at 343 (citing *Black v. Sheraton Corp. of America,* 564 F.2d 531, 541–42 (D.C.Cir. 1977)); *see generally* Note, "Discovery of Government Documents and the Official Information Privilege," 76 Colum.L.Rev. 142 (1976). The CFTC and the SEC argued that section 8(a) of the Commodities Exchange Act ("CEA"), 7 U.S.C. § 12(a) (1982), as amended by section 222(1) of the Futures Trading Act ("FTA") gave rise to the official information privilege in this case. App. 209–12. Finally, they argued that section 222(5) of the FTA, 7 U.S.C. § 12(f) (Supp. V 1983), which requires that the CFTC notify suppliers of information in its possession fourteen days prior to disclosure, barred disclosure of the documents within the timeframe set by appellant.

I agree with the majority that section 8(a) of the CEA, as amended by section 222(5) of the FTA, does not create a flat prohibition against disclosure of information submitted to the CFTC. As the majority observes, the reasoning of this court's decision in *Freeman v. Seligson,* 405 F.2d 1326 (D.C.Cir.1968), applies with equal force to amended section 8(a). I further concur in the majority's ruling that the 14-day disclosure rule applies to all documents, including indices, sought by Mr. Friedman from the CFTC and that it does not apply to the SEC documents.

The majority, however, refrains from addressing the intragovernmental deliberations privilege, perhaps because it concludes that both the law enforcement investigatory file privilege and this privilege were not properly raised by the

party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved." The broad presumption of Rule 26 in favor of discovery, however, is bounded by the limitations that "come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege." *Association for Women in Science v. Califano*, 566 F.2d 339, 343 (D.C.Cir.1977) (*"AWIS"*) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S.Ct. 385, 391–92, 91 L.Ed. 451 (1947)). As the majority recognizes, none of the parties seriously questions the relevance of the information sought by Mr. Friedman to the underlying civil suits. Maj. Op. 1340–1341. Rather, appellant's subpoenas implicate the limitation on discovery of *privileged* information embodied in Rule 26.

Over the years, federal courts have recognized a number of governmental privileges that come within the purview of this limitation.[4] The government privilege most relevant to this case—the qualified privilege for law enforcement investigatory files—was expressly recognized by this court in *Black v. Sheraton Corp. of Amer-*

*ica*, 564 F.2d 531, 541–42 (D.C.Cir.1977). *See also United States v. Winner*, 641 F.2d 825, 831 (10th Cir.1981).

The majority concludes that, notwithstanding the demand by Mr. Friedman for immediate resolution of this issue, the failure of the CFTC and SEC to satisfy elaborate procedural requirements, fashioned in entirely different settings, for claiming this privilege prevented the District Court's acceptance of this ground. Specifically, the majority faults the District Court's determination in this respect as "premature." Maj. Op. 1341–1343. I disagree.

To be sure, the party asserting a privilege has the burden of establishing its existence. *Black v. Sheraton Corp. of America*, 564 F.2d 531, 547 (D.C.Cir.1977). Generally, the Government must formally assert a claim of executive privilege.[5] Courts have not, however, applied these procedural requirements inflexibly. Rather, they have taken into account the particular circumstances of each case in determining whether the privilege was properly asserted. For example, in *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1

agencies. Nonetheless, it is clear that on remand, the CFTC and SEC remain free to assert this privilege as a basis for withholding at least some of the documents sought by appellant's subpoenas. For instance, it seems highly likely that the privilege would be implicated by disclosure of the indices that describe the numerous documents and testimony compiled by the CFTC and the SEC. *Cf. United States v. Winner*, 641 F.2d 825, 831 (10th Cir.1981) (observing that the Government may assert both law enforcement investigatory and intragovernmental deliberation privileges with regard to ongoing grand jury proceedings).

4. A qualified executive privilege permits the government to restrict disclosure of documents that contain military or diplomatic secrets. *United States v. Reynolds*, 345 U.S. 1, 11, 73 S.Ct. 528, 533, 97 L.Ed. 727 (1953). Similarly, a qualified informer's privilege protects from disclosure the identity of persons who furnish information to the Government regarding violations of the law. *Roviaro v. United States*, 353 U.S. 53, 59–62, 77 S.Ct. 623, 627–28, 1 L.Ed.2d 639 (1957); *see also Black v. Sheraton Corp. of America*, 564 F.2d 550, 553–55, 97 L.Ed. 727 (D.C.Cir.1977). Courts have also recognized a

governmental privilege protecting disclosure of documents that would reveal policy deliberations of the Government. *See* n. 3 *supra* and cases cited therein.

5. In the ordinary case, the head of the department with control over the matter accomplishes this by executing an affidavit showing that the officer has personally reviewed the documents and considered the claim of privilege. *See Reynolds v. United States*, 345 U.S. 1, 7–8, 73 S.Ct. 528, 531–32, 97 L.Ed. 727 (1953); *Black v. Sheraton Corp. of America*, 564 F.2d 531, 543–44 (D.C.Cir.1977). This requirement ensures that the Government, rather than another party seeking to prevent disclosure, claims the privilege, and that it is not lightly raised. *See AWIS*, 566 F.2d at 348; *V.E.B. Carl Zeiss*, 40 F.R.D. at 326 n. 33. Moreover, it enables the courts to determine whether the privilege is properly claimed as to the particular documents, especially when the Government seeks to withhold the documents in their entirety and also to avoid *in camera* inspection by the reviewing court. *See Reynolds v. United States*, 345 U.S. at 8, 73 S.Ct. at 532. Similar purposes underlie the presumption in favor of *in camera* inspection. *See* n. 9, *infra*.

L.Ed.2d 639 (1957), the Supreme Court recognized a claim of informer's privilege based upon an objection by the Government, rather than upon an affidavit detailing formal review by the Attorney General. 353 U.S. at 55, 77 S.Ct. at 624. Similarly, this court in *AWIS* considered a claim of privilege based upon official confidential information, where the forms containing the confidential information were in a standard format and the United States Attorney rather than the Secretary of Health, Education and Welfare asserted the claim. 566 F.2d at 347–48. Further, in *Black v. Sheraton Corp. of America,* this court held that an affidavit of the Attorney General was sufficient despite its failure to claim that all documents had been examined personally. The court reasoned that since the purpose of the affidavit was to preserve more specific objections regarding particular documents, and the Attorney General had agreed to present some of the documents for *in camera* inspection, the privilege was properly claimed. 564 F.2d at 543. *See also United States v. Winner,* 641 F.2d at 832 (approving assertion of privilege by subordinate officials of Justice Department in criminal case involving *Brady* material); *Peck v. United States,* 88 F.R.D. 65, 73–74 (S.D.N.Y.1980) (upholding assertion of privilege despite Attorney General's failure personally to review each document when Attorney General, based on representations of lower officials, decided to assert privilege).

Thus, there is no rigid approach that must be immutably followed on pain of fatal error, as if the District Judge were a pharmacist preparing a prescription. The procedures for resolving a claim of privilege do not lend themselves to slavish adherence to a handbook of procedures drawn from court opinions. This practical but critical point brings us back to the facts of this case. When the highly extraordinary circumstances of Mr. Friedman's demand for immediate production of thousands of investigatory documents are viewed in light of these sensible and salutary principles, it is manifest that the District Court properly considered and recognized the Government's claim of privilege.

The majority faults the claim of privilege primarily because of the failure of CFTC officials to examine the files personally, the absence of identification of documents or classes of documents, and the general breadth of the claim of privilege. Maj. Op. 1342–1343. But that is surely straining at the gnat and swallowing the camel. Here, every single document subpoenaed by this litigant is concededly contained in the *law enforcement investigatory files of the CFTC and SEC.* And, it is undisputed that the CFTC was carrying on the investigation at the very time Mr. Friedman's subpoenas arrived.[6] Both the CFTC and the SEC promptly objected and claimed the law enforcement, intragovernmental, and statutory privileges. They argued, plausibly, that disclosure of the documents would reveal law enforcement techniques and sources, the strategy and direction of the investigation, and could provide suspects with sensitive enforcement information.[7] Given the extremely limited amount of time the agencies had to review hundreds of thousands of documents contained in law enforcement investigatory files situated in four cities, *see* p. 1347, *supra,* it was humanly impossible to assert the privilege in the manner seemingly dictated by the majority's decision. I simply cannot, as the majority does with beguiling ease, pass over precisely what Mr. Friedman was re-

---

**6.** Although the SEC's investigation had concluded and its report had issued, it had given the CFTC access to all its files for use in the CFTC investigation. App. 83–86.

**7.** The majority suggests that the fact that some documents have been disclosed through FOIA requests supports the conclusion that a more detailed claim of privilege is required to enable the court properly to evaluate the claim. Contrary to the majority's suggestion, however, the CFTC was apparently referring to documents *already* disclosed under FOIA; these documents obviously were *not* included within the scope of the agencies' claim of privilege.

quiring the agencies to do in his quest for recovering money damages.

In these extreme circumstances, the CFTC's abbreviated assertion of the privilege was properly and appropriately recognized by the District Court. At bottom, this is third-party discovery run riot, which this court now condones despite the careful work of a conscientious District Judge seeking to cope in a principled fashion with demands for immediate production that in my view were patently ridiculous. Indeed, CFTC counsel represented to the District Court that a review of the very sort now contemplated by the majority would take approximately three months; nonetheless, CFTC counsel indicated a willingness, if given time, to assert the privilege formally. App. 81–82. That offer was unsatisfactory to the appellant, however. And, to add insult to injury, after demanding that the District Court rule on the motions to compel immediately and without briefing, this commodities futures investor has now proceeded to litigate the subpoena questions on appeal for over a year.[8]

Because, in my view, the privilege was properly asserted, the District Court's consideration of it as a bar to disclosure of the subpoenaed documents was also proper and in no wise premature. As the majority recognizes, a qualified privilege requires a court to balance the public interest furthered by the privilege against the need of the particular litigant for access to the privileged information. Maj. Op. 1342–1343, 1344–1345; see AWIS, 566 F.2d at 346; Black v. Sheraton Corp. of America, 564 F.2d at 555. Frequently, but not invariably, to weigh these interests a court must conduct an in camera inspection of the documents or a representative portion of them. See Black v. Sheraton Corp. of

America, 564 F.2d at 544 & n. 7. (in camera inspection is the usual course).

Here, however, the District Court properly balanced these interests without conducting such an inspection. Courts have fully recognized that in camera inspection is not an inflexible requirement to be followed by rote regardless of the circumstances presented. Thus, in the leading case of Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, our Chief Judge and then District Judge Robinson reasoned that in camera inspection was unnecessary where a reasonably detailed affidavit was presented, the Government was not accused of misconduct, plaintiffs already had the bulk of the information they sought and the plaintiff made no showing of necessity. 40 F.R.D. at 327. The reasoning of Carl Zeiss powerfully obtains in this case, notwithstanding the clear factual differences. The majority concedes, as it must, that appellant has totally "failed to make a strong showing of unavailability from alternative sources," Maj. Op. 1341, and thus that his showing of need was apallingly weak. Further, this suit, unlike many suits in which in camera inspection is required, involves no claim of government misconduct or liability to the party seeking the documents. See, e.g., United States v. Winner, 641 F.2d at 828 (convict's claim against prosecutor that documents showing he had been granted immunity were wrongfully withheld by the Government); Black v. Sheraton Corp. of America, 564 F.2d at 535 (plaintiff alleged illegal eavesdropping by the Government); Philadelphia Resistance v. Mitchell, 63 F.R.D. 125, 126 (E.D. Pa.1972) (plaintiffs alleged civil rights violation against the Government); Jabara v. Kelly, 62 F.R.D. 424, 427 (E.D.Mich.1974) (same). Rather, Mr. Friedman's subpoenas subjected these agencies to third-party

8. It is especially ironic to note that while the District Court's order denying the appellant's motions to compel has been on appeal in this court, Mr. Friedman has been waiting for his documents for over a year. During that time, the Florida action that prompted the emergency motions to compel in the first place has been settled, and only Chicago Board of Trade re-

mains a defendant in the civil action in Illinois. See n. 2 supra. Thus, the appellant's need for these documents has all but disappeared, while this appeal obviously has not. It bears repeating that if appellant had proceeded with this third party discovery in a more orderly fashion, much of the difficulty engendered by this litigation could have been avoided completely.

*discovery requests.* In such cases, courts are quite properly more inclined to recognize a governmental privilege. 8 C. Wright & A. Miller, *Federal Practice & Procedure*, § 2019 at 173 & n. 30 (1970 & Supp. 1983).[9] Finally, as the parties recognize, Mr. Friedman has already obtained many documents through FOIA requests; in addition, he has obtained SEC transcripts from the individuals who testified in that agency's enforcement investigative proceedings. App. 80, 191. He has thus by no stretch of the imagination been left out in the cold in his quest for agency records.

On the other side of the scale, the agencies' interest in maintaining the integrity of law enforcement investigatory files during an *ongoing* investigation far outweighs Mr. Friedman's minimal need for these documents.[10] Moreover, the Chicago Board of Trade, which is one of the subjects of the CFTC's investigation, remains a defendant in Mr. Friedman's suit in federal court. A clear and immediate danger plainly exists that a party to the litigation in which the subpoenaed information is sought to be used could learn of its contents. In these circumstances, the District Court properly declined to conduct a rushed *in camera* inspection of the documents.

In sum, the claim of privilege was, in my view, properly raised by the agencies in the compressed time frame of this litigation. The District Court acted entirely properly in declining here to conduct an *in camera* inspection in balancing the interests, given the extremely weak showing of need demonstrated by appellant. The majority's action, I respectfully submit, adds needlessly to the load of already overburdened district courts, faced with deciding issues as the parties frame them, without the studied leisure enjoyed in appellate chambers. Accordingly, I would affirm.

**9.** When it is not a party to the litigation, the Government would seem to have little interest in blocking disclosure of documents by asserting privileges that are not, in fact, valid. Thus, the concern that underlies *in camera* inspection—ensuring the validity of the Government's

privilege claim—is clearly much more limited when the agency is a non-party.

**10.** This interest includes preventing the subjects of that investigation from learning agency techniques, sources, direction and strategy.