**GOULD, INC., Plaintiff,**

**v.**

**MITSUI MINING & SMELTING CO., LTD., et al., Defendants.**

**Misc. A. No. 91–0271.**

United States District Court, District of Columbia.

Oct. 10, 1991.

Richard Linn, Marks Murase & White, Washington, D.C., Lance Gotthoffer, Marks Murase & White, New York City, John D. Jolliffe, Black, McCuskey, Souers & Arbaugh, Canton, Ohio, for Mitsui.

Charles F. Flynn, Asst. U.S. Atty., Washington, D.C., for U.S. Dept. of Commerce.

Thomas H. Stillman, Chief Counsel for Export Admin., U.S. Dept. of Commerce, Washington, D.C.

Maynard F. Thomson, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for Gould, Inc.

Daniel M. Hammer, Thompson, Hine & Flory, Cleveland, Ohio.

Brice M. Clagett, Covington & Burling, Washington, D.C., for Pechiney.

## MEMORANDUM OPINION AND ORDER

REVERCOMB, District Judge.

Before the Court is Defendant Mitsui Mining & Smelting Co.'s ("Mitsui") Motion to Compel Compliance With Subpoena, pursuant to Fed.R.Civ.P. 37. By its motion Mitsui seeks an order compelling the United States Department of Commerce ("DOC") to produce certain documents that Mitsui claims are relevant to civil litigation between it and Gould, Inc. ("Gould") currently pending before the Honorable Charles W. Joiner in the United States District Court for the Northern District of Ohio (Case No. C85–3199). Mitsui also seeks to compel the oral deposition of employees of the Office of Export Administration in the DOC.[1] For the following reasons, the Court denies Mitsui's motion.

The underlying civil litigation in this case concerns a claim of theft of trade secrets by Mitsui by way of a former employee of Gould, Inc., Dale C. Danver, and his company, Danver Technologies Group, Inc.

("DTG"). Gould, Inc. is a manufacturer of electrodeposited copper foil. DTG applied for and received a license from the DOC in 1984 to export copper foil technology. In support of that application, Danver provided documents and other relevant materials to the DOC.[2] In the process of investigating DTG's export license application, the DOC also received documents from Gould relating to its copper foil technology. Mitsui now seeks discovery of those documents from the DOC.[3]

■ The documents that Mitsui seeks by subpoena appear to be the same as those it sought, through one of its attorneys, in a FOIA request that was denied by this Court. *See Durnan v. United States Department of Commerce, et al.,* 777 F.Supp. 965 (1991). That case is now on appeal. In that case, the Court agreed with the government that the documents sought by Mr. Durnan fell within several exemptions to disclosure under the FOIA, including Exemption 3. That exemption applies to documents "specifically exempted from disclosure by statute ..., provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). This Court held that Section 12(c)(1) of the Export Administration Act ("EAA") met the criteria of Exemption 3 by specifically describing the type of information in the DOC's possession to be withheld: export license applications and related materials. *See* 50 U.S.C.App. § 2411(c)(1).

---

1. In the alternative, Mitsui requests that this Court refer the resolution of its motion to Judge Joiner, who is fully conversant with the facts of the case. Mitsui's subpoena seeks the deposition of DOC employees as well as the production of documents. Rule 37(a)(1) states in pertinent part that "[a]n application for an order to a *deponent* who is not a party shall be made to the court in the district where the deposition is being taken." (emphasis added). This provision applies to the deposition of employees of the Office of Export Administration in the DOC within the District of Columbia. Therefore, this Court must, according to the terms of Rule 37(a)(1), rule on Mitsui's motion.

2. DTG's export license was subsequently suspended by the DOC in February of 1985.

3. "By its subpoena, Mitsui seeks documents that were provided to the DOC by Mr. Dale C. Danver ..., his company, Danver Technologies Group, Inc. ..., or Gould, Inc. ... concerning Danver's export license application to transfer technical data relating to the process for manufacturing electrodeposited copper foil." Pl.'s Mem. at 1 (emphasis added).

Mitsui quite correctly argues that this Court's FOIA decision does not control the issue of the DOC's compliance with a subpoena in aid of discovery. *See* Def.'s Mem. at 7–8. For support of its argument, Mitsui relies heavily on *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336 (D.C.Cir.1984), in which the court of appeals for this circuit distinguished between disclosure under the FOIA and claims of privilege from discovery in civil litigation. *See Friedman*, 738 F.2d at 1344. *Friedman* concerned the attempt of the Commodities Future Trading Commission and the Securities and Exchange Commission to resist subpoenas to produce documents on grounds of the common law qualified law-enforcement investigatory files privilege and section 8(a) of the Commodities Exchange Act, 7 U.S.C. § 12(a). In interpreting the scope of privilege from discovery under the latter, statutory provision, the court of appeals stated that "[i]n the context of discovery of government documents in the course of civil litigation, the courts must accord the proper weight to the policies underlying these statutory protections, and to compare them with the factors supporting discovery in a particular lawsuit." 738 F.2d at 1344.

■■■ The statutory protection in question in the instant motion is Section 12(c)(1) of the EAA. That provision states in pertinent part that

> [i]nformation obtained under this Act ... after June 30, 1980, may be withheld only to the extent permitted by statute, *except that information obtained for the purpose of consideration of, or concerning, license applications under this Act ... shall be withheld from public disclosure unless the release of such information is determined by the Secretary to be in the national interest.*

50 U.S.C. § 2411(c)(1) (emphasis added). With regard to the documents sought by Mitsui, there has been no such determination made by the Secretary of Commerce. In the absence of such a determination, therefore, the mandatory "shall" in the passage quoted above would seem to bar the DOC from releasing the documents that Mitsui seeks, even by way of discovery in aid of civil litigation.

The Court bases this conclusion on the careful and extensive analysis of the legislative history and policy behind Section 12(c) undertaken recently by the Ninth Circuit Court of Appeals. *See Lessner v. United States Department of Commerce*, 827 F.2d 1333, 1337–40 (9th Cir.1987). The court of appeals's analysis suggests that Congress was concerned to protect the sensitive, confidential information given to the DOC in export license applications from falling into the hands of competitors. *Id.* at 1339. Moreover, as the government points out, statutory assurances of confidentiality protect national security interests implicated in export regulation and assure candor and confidence in the individuals and companies which provide the DOC with information in connection with license applications and investigations. Gov't's Mem. at 15–16. Although *Lessner* involved a FOIA request for export license application information, this Court believes that the "government's interest in confidentiality" is equally weighty in the discovery context. *See Friedman*, 738 F.2d at 1344; *see also Baldridge v. Shapiro*, 455 U.S. 345, 360–62, 102 S.Ct. 1103, 1112–13, 71 L.Ed.2d 199 (a statutory privilege against FOIA disclosure of raw census data also held to bar discovery when Congress evinced a strong policy of nondisclosure to ensure public participation and confidence in census data-gathering). The plain language of Section 12(c) suggests no less.

Under *Friedman*, this Court must weigh the interest in confidentiality against Mitsui's need to obtain discovery from the DOC in the context of this particular lawsuit. *See* 738 F.2d at 1344. To the extent that the information Mr. Danver provided to the DOC is relevant to Mitsui's defense, Mitsui should be able to obtain discovery directly from Gould, because the DOC has already turned that information over to Gould. *See* Kerner Decl. para. 7. In addition, in response to a FOIA request on Gould's behalf, the DOC in 1990 released to Gould some 4,287 pages of documents "constitut[ing] nearly all documents in the

Department's file originally furnished to the Department by Danver, by employees of Danver, by Wood Properties and by Gould, Inc., itself." *Id.* para. 8.[4] While Mitsui may well have need to discover these documents, it has not established that it is unable to obtain them from Gould. *See* Gotthoffer Decl. para. 9 ("[E]ven if Gould now has the documents, it appears that it has not provided a substantial number of them to Mitsui.") As Plaintiff in the underlying litigation, Gould is under the subpoena power of the district court in Ohio, and may be compelled to produce relevant documents subject, if need be, to a protective order. As the case stands at present, therefore, Mitsui has not shown why it must involve the DOC in its discovery requests. In short, it has not shown a need to obtain documents from the DOC that outweighs Congress's policy of maintaining the confidentiality of information submitted to the DOC in connection with export license applications, as expressed in Section 12(c)(1) of the EAA.

 Mitsui's request to take the oral deposition of DOC employees is apparently aimed at ascertaining the identity and contents of documents once in the custody of the DOC which the DOC no longer possesses. *See* Def.'s Ex. 1 para. 5, at 3. The DOC, by way of the Kerner Declaration, has identified the documents formerly in its possession which it released to Gould on the two occasions mentioned above. *See* Kerner Decl. paras. 7 & 8. Disclosure of the contents of other documents in connection with Mr. Danvers's export license application and investigation is barred by Section 12(c)(1) of the EAA, absent a determination by the Secretary of Commerce that disclosure would be in the national interest. *See* 50 U.S.C. § 2411(c)(1).

Because the Court finds that Section 12(c)(1) of the EAA prohibits the DOC from producing the documents Mitsui seeks in aid of civil litigation, the Court need not consider the other grounds of privilege of-

fered by the government in its Memorandum. Mitsui's motion is, accordingly, denied.

SO ORDERED.

---

4. The DOC, according to the Kerner Declaration, withheld from Gould's FOIA request "[Bureau of Export Administration] internal communications, Department agents' notes, reports of investigation, miscellaneous Danver documents unresponsive to [this particular] FOIA request, and one document originating in another agency (referred to that agency for its action)." *Id.* Mitsui does not address how this internal DOC material is relevant to its defense against Gould.