**CUMIS INSURANCE SOCIETY, INC., Plaintiff,**

v.

**SOUTH–COAST BANK, Westlands Bank, Paine, Webber, Jackson & Curtis, Inc., First Source Bank, Defendants.**

**No. S 83–326.**

United States District Court, N.D. Indiana, South Bend Division.

June 5, 1985.

See also, 587 F.Supp. 339.

R. Kent Rowe, South Bend, Ind., Peter D. Sullivan, Chicago, Ill., for plaintiff.

William J. Reinke, Douglas K. Dieterly, South Bend, Ind., Jeffrey B. Lieberman, Michael B. Roche, Chicago, Ill., John C. Hamilton, Ronald J. Jaicomo, South Bend, Ind., for defendants.

## MEMORANDUM and ORDER

ALLEN SHARP, Chief Judge.

This cause is before the court on the motion to quash of R. Lawrence Steele, Jr., the United States Attorney for the Northern District of Indiana [U.S. Attorney] filed April 8, 1985.[1] The U.S. Attorney moves the court to quash a subpoena *duces tecum* issued to him at the request of Paine, Webber, Jackson & Curtis [Paine Webber] on March 5, 1985 to obtain the following from the file of *U.S.A. v. Larry L. Winsch*, SCR 82–38–01:

> All documents, including but not limited to notes, interviews, transcripts, records and the contents of any files which refer or relate to the investigation of the embezzlement of funds from AAA Federal Credit Union by Larry Winsch.
>
> [Deposition Subpoena, March 5, 1985.]

Between 1978 and June of 1982, Larry Winsch [Winsch] was the manager and chief operating officer of the AAA Federal Credit Union [AAA] in South Bend, Indiana. During 1980 and 1981, Winsch embezzled approximately $294,000 in funds from AAA. As part of his scheme, on May 18, 1981, Winsch opened an account in the name of AAA with AAA funds at Paine Webber. In August and September 1981, Winsch transferred approximately $205,000 in AAA funds held on account at Westlands Bank [Westlands] and South-Coast Bank [South-Coast] to the Paine Webber account. On November 19, 1981, Winsch wire transferred $200,000 of the funds in the Paine Webber account to his own personal account at Conti Commodities. Sub-

---

**1.** Paine Webber filed a memorandum in opposition to the United States Attorney's motion to quash on April 24, 1985. Oral argument was heard by the court on this motion at the pretrial conference held on May 17, 1985 in South Bend, Indiana.

sequently, Winsch pleaded guilty to a seven-count information and was sentenced by this court to three years in a federal penitentiary. He is now out of prison on parole.

The U.S. Attorney makes several claims as to why the subpoena should be quashed. First, he asserts that the documents requested by Paine Webber are not under his control. He states that although his file contains copies of investigative reports made by the Federal Bureau of Investigation [FBI] utilizing records obtained by means of grand jury subpoenas, the actual case file is maintained at its district office in Indianapolis, Indiana, under the control of its agent in charge, John C. McGinley. Second, assuming Paine Webber causes a subpoena to be issued to the correct party [i.e., the FBI], the subpoena should be quashed on the authority of *Russ v. Ratliff*, 68 F.R.D. 691 [E.D.Ark.1975]. In *Russ*, private litigants also wanted to obtain the benefits of a criminal investigation carried out by the FBI. The court there agreed with the government that [1] information in an FBI investigative file is privileged under Fed.R.Civ.P. 26[b]; [2] a request for an FBI investigative file is unreasonable where information contained in it is available from original sources; and [3] such a request is oppressive since it interferes with the FBI's intended purpose. Third, the U.S. Attorney argues that the material sought raises Rule 6[e] issues since much of the FBI Agent's reports flows from records obtained in response to grand jury subpoenas. Finally, the U.S. Attorney suggests that, notwithstanding Rule 6[e](3)[C][i] procedures, disclosure of financial records obtained by grand jury subpoena for purposes other than criminal prosecution may be proscribed by the Right to Financial Privacy Act, 12 U.S.C. § 3420.

The court turns first to the issue of the FBI investigative reports which are part of the government files sought in this case.

The U.S. Attorney argues: 1] that he does not have "control" of such documents and, thus, cannot comply with the discovery request of Paine Webber, and 2] the materials sought are privileged within the meaning of Fed.R.Civ.P. 26[b][1].

In relevant part, Fed.R.Civ.P. 34 provides:

Any party may serve on any other party a request [1] to produce and permit the party making the request ... to inspect and copy, any designated documents ... or to inspect and copy, test or sample any tangible things which constitute or contain matters within the scope of Rule 26[b] and which are in the *possession, custody* or *control* of the party upon whom the request is served....[2] [Emphasis added.]

The investigative files which are sought by Paine Webber are "relevant to the subject matter ... in the pending matter." Fed.R.Civ.P. 26[b][1]. Indeed, the information sought forms the basis of the complaint of plaintiff, Cumis Insurance Society, Inc. [CUMIS] against all the defendants and Paine Webber's action against Winsch himself. Winsch is a third party defendant in the case being sued by Paine Webber to recover its costs, expenses and attorneys' fees incurred in defending the action as well as for damages in the amount of any judgment obtained by Cumis against Paine Webber in the lawsuit.

The second prong of Fed.R.Civ.P. 34 is also satisfied here. The document sought must be in the "possession, custody or control" of the party upon whom the request is served. The phrase "possession, custody or control" is in the disjunctive and only one of the enumerated requirements need be met. Since it is undisputed that the U.S. Attorney has in his possession a copy of the FBI investigative report, the court finds the U.S. Attorney's argument on "control" to be without merit.

---

**2.** Fed.R.Civ.P. 34[c] applies the general scope of discovery with respect to documents to persons not a party to the action.

It provides in pertinent part:

[c] *Persons Not Parties.* This rule does not preclude an independent action against a person not a party for production of documents and things and permission to enter upon land.

A second argument relevant to the FBI investigative reports and set forth by the U.S. Attorney on support of his motion to quash is that the materials sought are "privileged" within the meaning of Fed.R.Civ.P. 26[b][1].[3] He relies on *Russ v. Ratliff, supra,* to support his allegation that such privilege exists in this case. Having reviewed that authority, the court finds no rationale for the conclusion arrived at by the *Russ* court. A qualified common law privilege does exist within the meaning of Fed.R.Civ.P. 26[b] for law enforcement investigatory files. *Friedman v. Bache Halsey Stuart Shields, Inc.,* 738 F.2d 1336, 1341 [D.D.C.1984]. Generally, the applicable federal privilege for criminal investigative files provide for the protection of files relating to *ongoing* criminal investigations. *Sirmans v. City of South Miami,* 86 F.R.D. 492, 495 [S.D.Fla.1980] and cases cited therein. [Emphasis added.] When the existence of such a conditional privilege is established, there is a need to balance the public interest in nondisclosure against the need of the applicant for access to the privileged information. *Friedman,* 738 F.2d at 1341. The party claiming privilege has the burden to establish its existence. *Id.*

> [G]overnmental privilege[s] must be formally asserted and delineated in order to be raised properly....
>
> ....

The claiming official must "have seen and considered the contents of the documents and himself have formed the view that on grounds of public interest they ought not to be produced" and state with specificity the rationale of the claimed privilege....

....

Formally claiming a privilege should involve specifying which documents or class of documents are privileged and for what reasons, especially where the nature of requested documents does not reveal an obviously privileged matter. *Id.* at 1342 quoting *Kerr v. United States District Court for Northern District of California,* 511 F.2d 192, 198 [9th Cir.1975].

It is only when the claim of privilege has been presented to a district court with appropriate deliberation and precision that the duty of the demanding party to show his or her need for disclosure is triggered. *Friedman,* 738 F.2d at 1342.

The U.S. Attorney has made a generalized claim that the FBI investigative file is privileged, that a request for such file is unreasonable when the same information is available from original sources and that such a request is oppressive since it interferes with the FBI's intended purpose. However, at no point in his brief does he give any specific reason as to *why* the documents are privileged. He never enumerated the kinds or classes of infor-

---

**3.** It is settled that "privilege" as used in Rule 26 means privilege as determined by the Federal Rules of Evidence. *United States v. Reynolds,* 345 U.S. 1, 6, 73 S.Ct. 528, 531, 97 L.Ed. 727 [1953]. Rule 501 of the Federal Rules of Evidence provides:

Rule 501. GENERAL RULE
Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law.

Rule 501 differentiates between actions involving federal question jurisdiction and those where diversity jurisdiction applies. In criminal and federal question civil cases, federally evolved rules on privilege should apply since federal policy is being enforced. Conversely, in diversity cases where the litigation in question turns on a substantive question of state law, state rules of privilege should apply unless the proof is directed at a claim or defense for which federal law supplies the rule of decision. *See* Fed.R.Evid. 501, Notes of Committee on the Judiciary Senate Report No. 93–1277, 28 U.S.C.A. at pp. 369–70.

In the absence of Indiana authority on the privilege attached to investigative files, the court turns to the common law on privileges as set out in numerous federal cases.

mation contained in the files nor indicated specifically what is being jeopardized by disclosure. At oral argument, counsel representing the U.S. Attorney acknowledged that the only interest the government has in keeping the investigative file confidential is to eliminate any nuisance that might arise from similar requests in other cases.

As for such request being oppressive so as to interfere with the intended purpose of the FBI, it is of import to note that the FBI investigation of Larry Winsch is closed. Not only is the investigation complete, but Winsch has already plead guilty to an information, has served time in prison and has been paroled. In summary, the U.S. Attorney has not made an adequate presentation of the claim of privilege.

■ The U.S. Attorney also points out that the information sought by Paine Webber can be gleaned from the original sources. Although Paine Webber acknowledges that many of the original sources for the FBI investigation have been deposed, Paine Webber's Memorandum In Opposition to the U.S. Attorney's Motion to Quash, April 24, 1985, p. 5., it seeks the FBI files to determine if all of the original sources in the FBI investigation have been located and deposed. Further, the embezzlement took place in 1980 and 1981. Paine Webber argues that the information obtained by the FBI at or near the time of the embezzlement is likely to be more reliable and more complete than the information obtained during the course of discovery in the present action which began in earnest in 1984.[4] This court concurs with Paine Webber's position.

■ In addition to the argument made with respect to privilege, the U.S. Attorney contends that since much of the FBI agents' reports flow from records obtained in response to grand jury subpoenas, a Rule 6[e] order is appropriate. Rule 6[e] is intended to protect against disclosure of what actually took place in grand jury pro-

ceedings. Therefore, the policy of secrecy and the required showing of particularized need for disclosure of grand jury materials applies only to "matters occurring before the grand jury." *Matter of Grand Jury Proceedings, Miller Brewing Company,* 687 F.2d 1079, 1089 [7th Cir.1982].

■ In *Matter of Grand Jury Proceedings, Miller Brewing Company, supra,* the Seventh Circuit explains the distinction between documents subpoenaed and examined by a grand jury and "matters occurring before the grand jury":

Unless information reveals something about the grand jury proceedings, secrecy is unnecessary.... Unlike testimony, documents are created for purposes other than the grand jury investigation; they are therefore more likely to be useful for purposes other than revealing what occurred before the grand jury. Persons may have a legitimate interest in documents so that disclosure of them does not constitute disclosure of matters occurring before the grand jury.

*Id.* at 1089 citing *United States v. Stanford,* 589 F.2d 285, 291 [7th Cir.1978]. Thus, when a particular document is sought only "for its own sake—for its intrinsic value in the furtherance of a lawful investigation," it does not necessarily constitute a matter occurring before the grand jury. *Id; Securities & Exchange Commission v. Dresser Industries,* 628 F.2d 1368, 1382 [D.C.Cir.1980]. Moreover, a district court has wide discretion in determining whether documents reveal the inner workings of the grand jury.

■ Based on the records in this case, this court concludes that the U.S. Attorney's Rule 6[e] argument is lacking in merit. It is not clear from the brief or oral argument of the U.S. Attorney that the FBI file even contains such documents. On page 2 of the United States Attorney's Motion to Quash, he states that "the materials sought also raise Rule 6[e] issues since

---

4. Paine Webber's response to this contention of the U.S. Attorney is tantamount to a showing of necessity for disclosure of the investigative file, a burden Paine Webber need not carry in light

of this court's finding that the U.S. Attorney has not presented a proper privilege claim. Nevertheless, the court presents Paine Webber's response in an effort to set forth its entire case.

much of the FBI agent's *reports flow from records* obtained in response to grand jury subpoenas. [Emphasis added.] The U.S. Attorney merely infers that the substance of the reports is *derived from* records obtained in response to grand jury subpoenas; he never states that the records themselves are included in the file.

 The final argument posed by the U.S. Attorney is that the disclosure of financial records obtained by grand jury subpoenas may violate the Right to Financial Privacy Act. He presented no authority on this issue and research by the court has not revealed any case law to support his theory. Further, it would appear that the proper party to challenge any such disclosure of financial records is the individual whose records are being subject to scrutiny. Larry Winsch is a third-party defendant in this action and has been served with a copy of all motions or briefs relevant to the U.S. Attorney's Motion to Quash. Winsch has not appeared before the court personally to object to the subpoena *duces tecum* of Paine Webber nor has he filed any pleadings objecting to the discovery request. The court, therefore, will not bar disclosure on this ground.

 The file of the U.S. Attorney for the *Winsch* case, No. SCR 82–36, contains a copy of the indictment, a copy of the petition to enter a plea of guilty, a copy of the judgment, a transcript of the grand jury proceedings resulting in Winsch's indictment and a copy of the subpoenas to testify and to produce records, miscellaneous notes made by the U.S. Attorney's staff and the copies of the FBI investigative reports. Paine Webber has stated "that it is willing to forego any claim that the U.S. Attorney produce minutes of any grand jury proceedings." Paine Webber's Memorandum In Opposition to the U.S. Attorney's Motion to Quash, April 24, 1985 p. 6. The court interprets this to mean that Paine Webber waives any request for the grand jury transcripts of the proceedings leading to the indictment of Larry Winsch. To this list of exemptions, the court will add any and all copies of subpoenas to testify and to produce records before the grand jury contained in the *Winsch* file of the U.S. Attorney.

Accordingly, it is the order of this court that the motion to quash of the U.S. Attorney be, and is hereby, DENIED. It is further ordered that with the exception of the transcript of the grand jury proceedings and copies of the subpoenas to testify and to produce records leading to the indictment of Larry Winsch, the U.S. Attorney is hereby ordered to produce the remaining documents to counsel for Paine Webber within thirty [30] days of receipt of this order at a time and place mutually agreed to by the parties. SO ORDERED.