APEX OIL COMPANY, Plaintiff,

v.

Joseph DiMAURO, Triad Petroleum, Inc., Tic Commodities, Inc., Coastal Corporation, Coastal States Marketing, Inc., Belcher Oil Company, the Belcher Company of New York, Inc., Belcher New England, Inc., Belcher New Jersey, Inc., Stinnes Corporation, Stinnes Interoil, Inc., Eastern of New Jersey, Northeast Petroleum Industries, Inc., Northeast Petroleum Corporation, George E. Warren Corporation, Sinclair Global Brokerage, Inc., New York Mercantile Exchange and Julian Raber, Defendants.

No. 82 Civ. 1796 (JMW).

United States District Court, S.D. New York.

Sept. 18, 1985.

Pamela Rogers Chepiga, Cadwalader, Wickersham & Taft, New York City, for plaintiff.

Jon Paul Robbins, Nitkin, Alkalay, Handler & Robins, New York City, T. Christopher Donnelly, Nutter, McClennen & Fish, Boston, Mass., defendants Northeast Petroleum.

Owen & Fennel, New York City, David R. Schaefer, Brenner, Saltzman, Wallman & Goldman, New Haven, Conn., for defendant George E. Warren Corp.

Christopher H. Lunding, Clearly, Gottlieb, Steen & Hamilton, New York City, Lee Ann Watson, Katten, Muchin, Zavis, Pearl & Galler, Chicago, Ill., for defendants Stinnes Interoil, Inc.

George Birnbaun, Richenthal & Birnbaum, P.C., Bresler & Hackmyer, New York City, for defendant Sinclair Global.

Graham, Campaign & McCarthy, New York City, Kenneth J. McGuire, Stein, Bliablias & Pantages, Livingston, N.J., for defendant Eastern.

Peter Light, Cahill, Gordon & Reindel, New York City, for defendant N.Y. Mercantile.

Julius Berman, Phillip A. Geraci, Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant Julian Raber.

Martin I. Kaminsky, Pollack & Kaminsky, New York City, for defendants DiMauro, Triad and TIC.

Adam B. Gilbert, Shea & Gould, New York City, Robert E. Walls, Houston, Tex., for defendants Coastal and Belcher.

## MEMORANDUM AND ORDER

MICHAEL H. DOLINGER, United States Magistrate:

Plaintiff and defendant New York Mercantile Exchange are in dispute concerning the propriety of discovery requests by plaintiff directed to an investigation conducted by the Exchange in 1982. The investigation focussed on certain events in the oil contracts market that are the subject of this lawsuit, and plaintiff asserts both relevance and need. In opposing requests for both documents and deposition testimony concerning the investigation, the Exchange claims that disclosure is barred by both statute and an Exchange rule. For the reasons that follow, plaintiff's motion to compel is denied in part and granted in part subject to the terms of a protective order.

*The Facts*

Plaintiffs have alleged that during a one-month period in early 1982, numerous dealers and traders in petroleum products and several clearing members of the Exchange, in conspiracy with the Exchange, manipulated for their own profit the price and availability of Heating Oil No. 2, and by doing so caused plaintiff substantial financial and other business related injuries. Specifically with respect to the Exchange, the complaint alleges in substance that it participated with the other defendants in the price manipulation and furthermore that it knowingly or negligently failed to take action to enforce its own rules and to prevent the alleged market manipulation by the other defendants.

During the course of a deposition of R. Patrick Thompson, Vice President for Compliance at the Exchange, it was learned that the Exchange had conducted an investigation of deliveries made under Exchange contracts during the period at issue in this lawsuit, and that the investigation had covered such pertinent matters as collusion, price manipulation and the spreading of rumors. Mr. Thompson also disclosed the existence of one or more internal reports prepared by the Exchange in connection with this investigation.[1]

In response to further questioning at the deposition, however, Mr. Thompson was instructed not to disclose whom the investigators had interviewed, what the interviewees had said, what conclusions the Exchange had reached, and whether any action had been taken against any individuals or entities. (*See* Affidavit of Richard J. Weiner, Esq., sworn to July 25, 1985, at Exh. A.) In addition, the Exchange has declined to produce the reports in question.

Plaintiff has now moved to compel both disclosure of the reports—which have been produced to the Court for *in camera* inspection—and further testimony by Mr. Thompson concerning the investigation by the Exchange.

---

**1.** There apparently were four such reports, which this Court has reviewed *in camera.*

*Analysis*

The Exchange purports to invoke an absolute privilege against disclosure of the details of its investigation, and in doing so it relies upon both a provision of the Commodities Exchange Act and an Exchange rule that has been approved by the Commodity Futures Trading Commission ("the Commission"). Upon examination, neither supports the existence of such an absolute privilege. Nonetheless, the record reflects a basis for recognizing a conditional privilege against disclosure of the information.

## A. The Absolute Privilege Claim

The statutory provision in question is section 8c(1) of the Commodity Exchange Act, 7 U.S.C. § 12c(1), which provides as follows:

(1)(A) Any exchange or the Commission if the exchange fails to act, may suspend, expel, or otherwise discipline any person who is a member of that exchange, or deny any person access to the exchange. Any such action shall be taken solely in accordance with the rules of that exchange.

(B) Any suspension, expulsion, disciplinary, or access denial procedure established by an exchange rule shall provide for written notice to the Commission and to the person who is suspended, expelled or disciplined, or denied access, within thirty days, which includes the reasons for the exchange action in the form and manner the Commission prescribes. *An exchange shall make public its findings and the reasons for the exchange action in any such proceeding, including the action taken or the penalty imposed, but shall not disclose the evidence therefor, except to the person who is suspended, expelled, or disciplined, or denied access, and to the Commission.* (emphasis added.)

2. Were it otherwise, the provision would presumably have prohibited the disclosure of any information or evidence gathered in the course of an investigation.

Although the Exchange urges that this section unambiguously bars disclosure of any investigative materials in civil discovery—even if the Exchange is a party—that is plainly not the case. Indeed, it appears that this provision is not even directly applicable to the present case.

■ As written, the non-disclosure provision of section 8c is limited to "the evidence" on which an exchange bases its decision to suspend, expel, discipline or deny access to a member of the exchange following a disciplinary proceeding. It therefore does not appear to apply where an investigation has been undertaken but no proceeding instituted or where a proceeding is commenced but then terminated without a decision to impose some form of sanction against the member.[2]

This reading of the statute is supported not only by the plain wording of the provision but also by the reference to it in both the Senate and the Conference Reports. The comment in the Senate Report concerning this specific provision is entitled "Disclosure of results of exchange disciplinary proceedings" and states that the new provision "requires each exchange to make public its findings and reasons for the action in proceedings to discipline or deny membership to any person, including the action taken or the penalty imposed, but not the evidence for the action, except to the person subject to the action and to the Commission." S.Rep. No. 850, 95th Cong., 2nd Sess. 37–38, *reprinted in* 1978 U.S.Code, Cong. & Ad.News 2087, 2125–26. The House Conference Report is similarly worded. *See* H.R.Rep. No. 1628, 95th Cong., 2nd Sess. 24–25, *reprinted in* 1978 U.S. Code, Cong. & Ad.News at 2185–86.

■ On the present record before the Court, there is no evidence that any disciplinary proceeding was instituted, much less that any such proceeding resulted in disciplinary "action" by the Exchange.[3]

3. As the proponent of a privilege, the Exchange of course bears the burden of establishing all facts necessary to the assertion of the privilege. *See, e.g., Friedman v. Bache Halsey Stuart Shields, Inc.,* 738 F.2d 1336, 1341–42 (D.C.Cir.

Accordingly, the Exchange has not established that section 8c would bar disclosure of investigatory materials even if it were read to create an absolute privilege within its defined scope.

■ Furthermore, even if section 8c applied to all investigatory materials regardless of whether a formal proceeding had been undertaken or eventuated in disciplinary action, no absolute privilege could reasonably be inferred from the statute. As noted, the provision requires the exchange to *"make public* its findings and the reasons for the exchange action in any such proceeding ..." but directs that it *"not disclose* the evidence therefor...." 7 U.S.C. § 12c(1)(B) (emphasis added). The words "not disclose" are fairly construed as the converse of the term "make public" —that is, the Exchange is not to make public the evidence on it based its decision, although it is to make public both the decision and the reasons for it. So viewed, the words "not disclose" do not appear to address the question of discoverability of the investigatory materials in civil litigation; the Exchange is prohibited from making evidence public, but this is not tantamount to disclosure by the Exchange to a litigant, particularly in view of the availability of protective orders designed to prevent public access to the information in question. As one court recently observed in connection with another provision of the Act, "statutes prohibiting general publication do not prohibit judicial discovery." *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1344 (D.C.Cir.1984). *Accord,*

1984); *Black v. Sheraton Corp. of America,* 564 F.2d 531, 547 (D.C.Cir.1977); In re *Horowitz,* 482 F.2d 72, 82 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973).

**4.** The Exchange claims that reference to the legislative history is inappropriate because the statute is unambiguous. *See, e.g.,* In re *Mart i.l.v.e.s. Goldrich,* 771 F.2d 28, 30, (2d Cir.1985) (citing *United States v. Oregon,* 366 U.S. 643, 648, 81 S.Ct. 1278, 1280, 6 L.Ed.2d 575 (1961)). However, resort to legislative history is appropriate unless the statutory language is "crystal clear," *Berger v. Heckler,* 771 F.2d 1556, 1570 (2d

*e.g., Freeman v. Seligson,* 405 F.2d 1326, 1348, 1351 (D.C.Cir.1968).

■ It comes as no surprise, therefore, that the legislative history of this provision squarely contradicts the claim of the Exchange that section 8c constitutes an absolute bar to discovery.[4]

As originally drafted, the Senate version of this provision specifically stated that the non-disclosure rule did not apply to criminal investigations or proceedings. *See* S.Rep. No. 850, *supra,* at 38, *reprinted* in 1978 U.S.Code, Cong. & Ad.News at 2126. That reference was eliminated in the version ultimately enacted, and this change was explained as follows in the Conference Report:

The conference substitute adopts the Senate provision with a modification deleting the language that would only allow the disclosure of the evidence in such proceedings in criminal investigations and proceedings (in addition to the person subject to the action and the Commission). The evidence could thus be released in either civil or criminal proceedings.

H.R.Rep. 1628, *supra,* at 25, *reprinted in* 1978 U.S.Code, Cong. & Ad.News at 2186. Thus, the intent was to permit disclosure, where appropriate, in civil litigation. This purpose is consistent with the view stated by the Commodity Futures Trading Commission—the federal agency with immediate responsibility for enforcement of the statute—during the course of congressional hearings. *See* Conference of the Senate Agriculture Committee and House Agricul-

Cir.1985), and such resort is permitted, even if the language is clear, "to ascertain 'whether literal *application* of the statute would "pervert its manifest purposes." ' " *Id.* at 1571 (citing cases). In this case, the provision is certainly not unambiguous, and, indeed, the statutory language is more reasonably interpreted in a manner contrary to that espoused by the Exchange. *Cf. Baldrige v. Shapiro,* 455 U.S. 345, 356–59, 361, 102 S.Ct. 1103, 1110–12, 1113, 71 L.Ed.2d 199 (1982) (court examines legislative history of sections 8 and 9 of the Census Act to determine existence of absolute privilege).

ture Committee on S. 2391, 95th Cong., 2d Sess., at 26 (August 17, 1978).[5]

■ This reading of section 8c of the Act was reconfirmed in an interpretative letter from the general counsel of the Commission, in which he stated:

The Conferees deleted the provision in the amendment to section 8c(1)(B) which would have expressly authorized such disclosure solely to make clear that it did not intend to limit the availability of this evidence strictly to criminal matters. Rather, Congress intended to enable private parties in civil litigation also to obtain this information from contract markets.... The statute's silence with respect to disclosure of this evidence in criminal or civil litigation is clarified with specificity in the report of the Committee of Conference.

Interpretive Letter No. 80-1, Commodity Law Reporter (CCH), ¶ 20,966 at 23,876–77. Although not binding, this statement is consistent with the legislative history and plainly reflects the Commission's own view, as stated to the Conference Committee at the time of enactment. Such a consistently held view of the agency to which administrative responsibility is assigned by the statute is entitled to substantial deference, *see, e.g., Cook v. Pan American World Airways, Inc.,* Dkt. No. 771 F.2d 635, 642–43 (2d Cir.1985) (citing cases), and in this case is plainly a reasonable, and indeed correct, interpretation of section 8c(1)(B).[6]

The Exchange relies alternatively on one of its own internal rules, which are promulgated by the Exchange and approved by the Commission pursuant to 7 U.S.C. § 7a(12). The provision in question—Rule

59.19—is found in Chapter 9 of the Exchange rules, entitled "Disciplinary Proceedings," and provides that

All investigatory materials and all other documents and evidence presented in any disciplinary proceeding, other than those included in a decision, shall be confidential and shall not be disclosed to any person.

(*See* Affidavit of Rosemary McFadden, sworn to August 6, 1985, at Exh. 1.)

■ Although the rule is somewhat ambiguous, I will construe it as the Exchange now reads it—that is, as covering all investigatory materials, regardless of whether they find their way into a disciplinary proceeding. Even so read, the rule cannot be said to create an absolute bar to disclosure in a civil case.

First, it is doubtful that any party to a litigation can insulate itself from discovery simply by adopting a rule or policy against disclosure of internally created materials.[7] The very strong policy of liberal discovery incorporated in the federal rules does not permit such an indulgence. *Cf. Clavir v. United States,* 84 F.R.D. 612, 614 (S.D.N.Y.1979) (promise of confidentiality by F.B.I. to an agent cannot, by itself, bar discovery of agent's admissions). Second, the fact that the Commission has approved the rule similarly does not create a basis for inferring an absolute privilege. Quite to the contrary, since the governing statute contemplates the potential availability of such materials in civil discovery, it is doubtful that the Commission would have the power to create an absolute bar in civil

5. The Commission stated

[O]ur concern is that by saying this restriction does not apply to criminal investigations [the bill] may imply that it applies to civil actions against private litigants, either against the Exchange or the person disciplined by the Exchange. We feel that by deleting that proviso at the end, then the courts can decide whether or not the evidence should be released.

*Id.*

6. It may be noted that other provisions of the statute also support this conclusion. Most pertinently, the Act permits the Commission to make public various types of potentially sensitive in-

formation if it was disclosed in an administrative proceeding, including, apparently, a disciplinary proceeding. *See* 7 U.S.C. §§ 12(b) & (c). If such information may be made public it would seem unreasonable to impute to Congress at the same time an intention to preclude civil discovery—even under a protective order—of equivalent information held by an exchange.

7. I do not address the question of whether the Exchange—if it were a non-party witness in this case—might have a more persuasive basis for avoiding any inquiry as to its internal investigation.

litigation. Moreover, since the Commission endorsed that view of section 8c of the statute, it is fair to presume that the Commission did not interpret Exchange Rule 59.19 as creating an absolute bar when it approved the rule.

### B. A Qualified Privilege

Notwithstanding the absence of any legal basis for an assertion of an absolute privilege, the Exchange may be entitled to a more limited form of protection for the investigatory materials at issue here. Both the statutory authority previously referred to and certain policy considerations militate in favor of protecting the investigatory process of the Exchange from routine scrutiny by a litigant absent a showing of need by the party for the information.

 The Court's analysis begins with the oft-stated proposition that, under Rule 26(c), the appropriateness of protective relief from discovery depends upon a balancing of the litigation needs of the discovering party and any countervailing protectible interests of the party from whom discovery is sought. *See, e.g., Marrese v. American Academy of Orthopedic Surgeons,* 726 F.2d 1150, 1159 (7th Cir.1984) (*en banc*), *rev'd on other gds.,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274, *motion for clarification denied, petition for rehearing denied,* —— U.S. ——, 105 S.Ct. 2127, 85 L.Ed.2d 491 (1985); In re *Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation,* 669 F.2d 620, 623 (10th Cir.1982); *Kaufman v. Edelstein,* 539 F.2d 811, 821 (2d Cir.1976); *General Dynamics Corp. v. Selb Mfg. Co.,* 481

F.2d 1204, 1212 (8th Cir.1973), *cert. denied,* 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974). Consequently, where a party establishes that disclosure of requested information could cause injury to it or otherwise thwart desirable social policies, the discovering party will be required to demonstrate that its need for the information, and the harm that it would suffer from the denial of such information, outweigh the injury that disclosure would cause either the other party or the interests cited by it. *See, e.g., Buckley v. Valeo,* 424 U.S. 1, 64–65, 96 S.Ct. 612, 656–59, 46 L.Ed.2d 659 (1976) (First Amendment chill); *O'Connor v. Chrysler Corp.,* 86 F.R.D. 211, 217 (D.Mass.1980) (employer self-critical analysis privilege); *Bredice v. Doctor's Hospital, Inc.,* 50 F.R.D. 249 (D.D.C.1970), *aff'd,* 479 F.2d 920 (D.C.Cir.1973) (internal hospital inquiry); *Gillman v. United States,* 53 F.R.D. 316, (S.D.N.Y.1971) (hospital self-evaluation). *Cf. Lead Industries Ass'n, Inc. v. OSHA,* 610 F.2d 70, 82–83 (2d Cir. 1979), (discussing agency pre-decisional deliberative privilege in FOIA context).

In this case, the Exchange asserts that protection of investigatory materials is necessary to encourage both members and non-members of the Exchange to cooperate with its statutorily required internal investigations. (*See* McFadden Aff. at ¶ 6.)[8] This type of concern has repeatedly been recognized by the courts in protecting civil as well as criminal law-enforcement investigatory files from civil discovery. *See, e.g., Frankel v. SEC,* 460 F.2d 813, 817 (2d Cir.), *cert. denied,* 409 U.S. 889, 93 S.Ct. 125, 34

---

**8.** As stated by Mr. McFadden:

If it were known that confidential investigatory materials were subject to production in civil litigation, the Exchange's ability to conduct the investigations required by the Act and CFTC regulations would be significantly impaired. Many witnesses who cooperate with Exchange investigators do so only on the understanding that their statements will be and remain confidential. Many nonmember witnesses would refuse to cooperate if they knew that their statements might be subject to production in civil litigation, and member witnesses might be reluctant to cooperate.

The Exchange has no power to compel cooperation by non members. As to members, if it were known that investigatory materials might be subject to production in civil litigation, the Exchange would be forced to divert significant resources from investigatory activities to the compelling of cooperation from witnesses and targets. The Act and Exchange Rules provide for the confidentiality of investigatory materials, and there are significant policy reasons for giving effect to the provisions of the Act and Rules.

*Id.*

L.Ed.2d 146 (1972).[9] Moreover, although the Exchange is not a governmental agency, a similar policy has been recognized with respect to investigative materials generated by industry regulatory organizations comparable to the commodity exchange. Thus, for example, a privilege has been recognized with respect to witness statements and other internal investigative documents of the National Association of Securities Dealers. *See, e.g., Ross v. Bolton,* 106 F.R.D. 22, 23–25 (S.D.N.Y.1985). As the Court in *Ross* noted:

> There is a strong public interest in maintaining the integrity of effective industry self-regulation. This interest would clearly be undermined by making NASD files fair game for any of the thousands of private securities fraud litigants across the country who wish to shortcut their own discovery efforts and instead to reap the benefits of the Association's ongoing, statutorily governed work. 15 U.S.C. §§ 78o–3, 78s.

*Id.* at 24. *See ibid.* (citing *Garnatz v. Stiel, Nicolaus & Co.,* Civ. Dkt. No. 75–934C(2) (E.D.Mo. June 21, 1976); *Sumrall v. Hackert/Modesitt Investments, Ltd.,* Civ. Dkt. No. 84–4717 (Denver Dist.Ct. December 3, 1984)). *Cf. Wright v. Patrolmen's Benevolent Ass'n,* 72 F.R.D. 161, 163 (S.D.N.Y.1976) (limited discovery of investigation conducted by bar association).

As is the case with the NASD, the Exchange is statutorily assigned a significant responsibility, under the supervision of a federal agency, for policing industry practices and investigating possible illegal activity by its members. Moreover, the statute under which it operates plainly contemplates some degree of protection from routine disclosure of the fruits of its investigative efforts. *See* 7 U.S.C. § 12c(1)(B). *Cf.* 7 U.S.C. § 12a. Indeed, this is suggested as well by the comment of the Commission, in support of the Conference version of section 8c, that deletion of the Senate reference to disclosure of investigative materials in "criminal" proceedings meant that "the courts can decide whether or not the evidence should be released." Conference on S. 2391, *supra,* at 26.

▇▇▇ In sum, the information in question is entitled to protection absent a showing of need by plaintiff. I therefore turn to plaintiff's showing.

Plaintiff appears to make two principal arguments in favor of disclosure. First, it notes that the Exchange is a party to this action. This distinguishes the above-cited cases involving the NASD, since the Association was not a party in those lawsuits. Second, plaintiff argues that it needs the information in question to assess the accuracy and truthfulness of previously obtained deposition testimony. In this regard, plaintiff argues that any witness statements made shortly after the events in question will be more detailed and accurate than deposition testimony long after those events, and that the statements might, in any event, diverge from the testimony offered in pre-trial discovery.

▇▇▇ On balance, I conclude that plaintiff has not made an adequate showing of need. As noted, it is true that the Exchange is a defendant here, having been charged by plaintiff with participation in a price manipulation conspiracy and with having either knowingly or negligently failed to enforce its own rules during the period of alleged manipulation. There appears to be no dispute, however, that plaintiff has been afforded full discovery from the Exchange as to the actions of its Control Committee and its administration at the time of the events in question. The subsequent investigation by its Enforcement Staff is not, in itself, a subject of plaintiff's claims. Thus the fact that the Exchange is a defendant here has not been shown, on the present facts, to justify rou-

---

**9.** I note that the use of a protective order does not necessarily cure the problem. The reluctance of potential witnesses to cooperate with the Exchange may be attributable, at least in part, to a desire either not to be identified by the alleged wrongdoer as having supplied incriminating information or not to become involved in civil litigation. Neither of those difficulties would be avoided simply by reliance on a protective order.

tine disclosure of the enforcement investigation.

■ As for the asserted usefulness to plaintiff of the investigative materials as possible sources of information about the other defendants, again plaintiff has not made a compelling showing. First, it has not been disputed that all of.the witnesses interviewed and all of the documents reviewed by the investigators have been made available to plaintiff in the course of pre-trial discovery. (*See* letter to the Court from Peter Leight, Esq., dated August 13, 1985 at 12.) Thus plaintiff has not attempted to show that the information in question is not available from other sources. Second, plaintiff's principal argument—that statements made to the Exchange investigators may differ from testimony given by the same witnesses in pre-trial depositions—if accepted would eliminate any requirement of a particularized showing of need. There is always a possibility of divergent testimony, and if such a mere possibility were sufficient to waive any protection for the investigative files, it would necessarily do so in every case. Speculation of this sort is simply inadequate to justify overcoming the presumptive protection accorded the investigative files.[10]

Finally, plaintiff points to one instance in which a witness for the Exchange testified at his deposition that he had received telephone calls from two other individuals concerning a meeting allegedly called by defendant Joseph DiMauro. Noting that the two individuals in question at their depositions had in substance denied this assertion, plaintiff argues that this illustrates its need for the discovery it seeks. (*See* letter to the Court from Robert Rippe, Esq., dated August 14, 1985 at 3–4.)[11]

■ The fact that witnesses who are cross-examined may disagree with each other about certain facts does not establish a need for materials that are otherwise protected. Such differences are an inevitable part of the fact-gathering process, and the trier of fact will ultimately determine such factual disputes. In any event, the investigative reports sought by plaintiff do not address, much less resolve, the factual dispute raised by plaintiff.

### C. *Identification of Interviewees*

■ As indicated, plaintiff has not made a sufficient showing of need to justify a general inquiry into the details of the investigation conducted by the Exchange. Nonetheless, a showing by plaintiff of genuine need would seem to depend, at least in part, on the identities of the individuals who were interviewed or contacted by the Exchange in the course of the investigation. This information has been withheld by the Exchange even though neither section 8c of the Act nor Exchange Rule 59.19 nor the policy cited by the Exchange requires such non-disclosure. In fairness to plaintiff, the identities of those individuals must be provided, albeit with no indication of whether they cooperated with the investigation or of the substance of any statements made by them.

### CONCLUSION

Plaintiff's motion to compel production of four investigative reports by the New York Mercantile Exchange and to require further deposition testimony by R. Patrick Thompson is denied except that the Exchange shall identify all persons interviewed or contacted by it during the course of its investigation. Such disclosure shall be made within seven (7) days, pursuant to an appropriate protective order.

SO ORDERED.

---

**10.** It should also be noted that the documents requested do not contain witness statements, although in several instances they do cite brief snippets of administrative testimony by certain witnesses.

**11.** It should be noted that plaintiff somewhat mischaracterizes the testimony of one of the witnesses, Anthony Densieski. Mr. Densieski did not merely state that he could not recall such a conversation with the Exchange representative, but went on to deny that such a conversation had taken place. (*See* Densieski Dep. at 117, annexed to Rippe letter.)