DGM INVESTMENTS, INC., Triumph–WEF Venture LLC, on behalf of itself and its investors, DGM Trading Specialist Fund LLC, on behalf of itself and its investors, Triumph Premier Traders Ltd., on behalf of itself and its investors, and Triumph–MM Venture Ltd., on behalf of itself and its investors, Plaintiffs,

v.

NEW YORK FUTURES EXCHANGE, INC., Board of Trade of the City of New York, Inc., New York Futures Exchange Settlement Committee and its Members Being "Richard Roes" No. 1–10, the New York Clearing Corporation, and "John Does" No. 1–50, Individually, and as Agents and Representatives of the New York Futures Exchange, Inc., Board of Trade of the City of New York, Inc. and the New York Clearing Corporation, Defendants.

No. 01 Civ. 11602(RWS).

United States District Court, S.D. New York.

Aug. 23, 2004.

Lacher & Lovell–Taylor, by Michael A. Lacher, Adam J. Rader, of Counsel, New York City, for Plaintiffs.

Cadwalader, Wickersham & Taft, by Howard R. Hawkins, Jr., Jackie Friedman, of Counsel, New York City, for NYBOT Defendants.

## OPINION

SWEET, District Judge.

DGM Investments, Inc. ("DGM"), Triumph–WEF Venture LLC ("Triumph–WEF"), DGM Trading Specialist Fund LLC ("DGM–TSF"), Triumph Futures Fund Ltd. ("TFF"), Triumph Premier Traders Ltd. ("TPT"), Triumph Investment Fund Ltd. ("TIF"), and Triumph–MM Venture Ltd. ("T–MM") (collectively, "Plaintiffs") have moved pursuant to Rule 37(a)(2), Fed.R.Civ. P., for an order compelling certain documentary discovery and deposition testimony from Defendants Board of Trade of the City of New York, Inc. ("NYBOT"), New York Futures Exchange, Inc. ("NYFE"), New York Clearing Corporation ("NYCC"), and the New York Futures Exchange Settlement Committee and its members except for Norman Eisler (the "Settlement Committee") (collectively, the "NYBOT Defendants"). The motion is granted in part and denied in part for the reasons set forth below.

### Prior Proceedings

DGM commenced this action in December 2001, and the NYBOT Defendants moved to

dismiss the complaint in February 2002. Their motion was granted in an opinion of October 17, 2002. *See DGM Investments, Inc. v. New York Futures Exchange, Inc.,* No. 01 Civ. 11602(RWS), 2002 WL 31356362 (S.D.N.Y. Oct. 17, 2002). While the NYBOT Defendants' motion to dismiss DGM's complaint was *sub judice,* other plaintiffs filed a separate action that was stayed, pending a determination of the motion to dismiss. By agreement of the parties, Plaintiffs subsequently consolidated the two actions and an amended consolidated complaint was filed on December 20, 2002. The amended consolidated complaint asserts various common-law and Commodity and Exchange Act ("CEA") claims related to the alleged manipulation of settlement prices for transactions in options on the P–Tech Futures contract market.[1] The NYBOT Defendants are alleged to have concealed this manipulation and to have failed to enforce NYFE rules governing methods used to settle P–Tech option contract prices.

In early 2003 the NYBOT Defendants again moved to dismiss, arguing that the amended consolidated complaint failed to adequately allege bad faith, standing, and fraud. The motion was granted in part and denied in part in an opinion of May 27, 2003, *see DGM Investments, Inc. v. New York Futures Exchange, Inc.,* 265 F.Supp.2d 254 (S.D.N.Y.2003) (the "May 2003 Opinion"), and the NYBOT Defendants' subsequent motion for reconsideration or interlocutory appeal was denied by an opinion of October 23, 2003. *See DGM Investments, Inc. v. New York Futures Exchange, Inc.,* 288 F.Supp.2d 519 (S.D.N.Y.2003).

The NYBOT Defendants filed an answer to the amended consolidated complaint on November 26, 2003, and on December 22, 2003, Plaintiffs moved to strike certain of the NYBOT Defendants' affirmative defenses. By an opinion of March 31, 2004, Plaintiffs' motion was granted. *See DGM Investments, Inc. v. New York Futures Exchange, Inc.,* No. 01 Civ. 11602(RWS), 2004 WL 635743 (S.D.N.Y. Mar. 31, 2004).

Plaintiffs filed the instant motion to compel discovery on June 9, 2004. After briefing by the parties, the motion was deemed fully submitted on June 23, 2004.

*Discussion*

Pursuant to Fed.R.Civ.P. 37(a)(2)(B), Plaintiffs seek to compel the deposition testimony of James Goodwin ("Goodwin"), Senior Vice President, Market Surveillance in charge of the Compliance Department of NYBOT and its subsidiary contract markets, including the NYFE. In an affidavit submitted in support of the NYBOT Defendants' motion to dismiss the amended consolidated complaint and dated January 17, 2003 (the "Goodwin Affidavit"), Goodwin swore that "[s]ince 2000 I have undertaken a number of investigations and analyses of the trading in the P–Tech that led to the events of May 2000." (Declaration of Michael A. Lacher, dated June 8, 2004 ("Lacher Decl."), Exh. A, at ¶ 4.) Plaintiffs contend that the NYBOT Defendants improperly blocked testimony from Goodwin with regard to the substance of these investigations on the basis of privilege during a deposition of Goodwin on February 9, 2004.

Plaintiffs also seek to compel the deposition testimony of Vincent White ("White"), a manager in the compliance department of NYBOT. Goodwin testified at his February 9, 2004 deposition that White was involved in the investigations into the manipulation of P–Tech settlement prices. On May 21, 2004, Plaintiffs requested that the NYBOT Defendants produce White to give deposition testimony relating to the details of the NYBOT investigations relating to the P–Tech market. The NYBOT Defendants have not refused to produce White but have indicated that they will continue to assert privilege and will not permit White to testify regarding the pending disciplinary proceeding.

Finally, pursuant to Fed.R.Civ.P. 37(a)(2)(A), Plaintiffs seek to compel the production of a certain draft Business Conduct Committee Report (the "BCC Report"), any manuals of procedures for the NYBOT compliance and surveillance office, any notes taken by Goodwin relevant to the P–Tech in-

---

**1.** According to the amended consolidated complaint, the P–Tech futures and options were based on a composite index of 100 technology stocks compiled by the Pacific Stock Exchange.

vestigations which were not previously produced, and any other relevant investigatory documents previously withheld.

The NYBOT Defendants argue that the information contained in the BCC Report[2] and all information concerning the NYBOT investigation into a potential disciplinary action against one former Exchange Member relating to settlement prices for P–Tech options are privileged under Section 8c(a)(2) of the CEA, 7 U.S.C. § 12c(a)(2), and, thus, protected from disclosure. According to the NYBOT Defendants, any compliance manuals in effect during the period August 1999 through May 2000 were destroyed as a result of the events of September 11, 2001, and they assert that the compliance manual currently in place was developed subsequent to the commencement of this action and, therefore, is not relevant. Plaintiffs, in turn, argue that the privilege invoked by the NYBOT Defendants is not applicable here and that, even if the privilege is applicable, the NYBOT Defendants have waived any objection to disclosure by a references to the investigations conducted by Goodwin in the Goodwin Affidavit.

There appears to be some disagreement or confusion among the parties as to what investigation or investigations are at issue here. According to the NYBOT Defendants, the only documents and testimony for which they have asserted a privilege are those relating to a specific investigation and possible disciplinary action against one former Exchange member. They further specify that, with the exception of the BCC Report, Plaintiffs have been afforded full discovery on the issues relevant to this case, including all relevant trading records and all materials forming the basis of the Goodwin Affidavit. Plaintiffs, however, note that Goodwin referred to a "number of investigations" in the Goodwin Affidavit (Lacher Decl., Exh. A, at ¶ 4), and that Goodwin testified that "[s]eparate and apart from the review done specifically to

respond to the issues here I can think perhaps of three" investigations relating to P–Tech settlement prices which have occurred from 2000 to the present. (*Id.*, Exh. C, at 32.) Plaintiffs are seeking to compel testimony and documentary discovery with regard to all of the investigations cited by Goodwin, not solely the investigation and possible disciplinary action to which the BCC Report relates. The NYBOT Defendants' submission does not directly address the existence or status of any of the investigations by NYBOT referenced by Goodwin in the Goodwin Affidavit or during Goodwin's deposition.

### Applicable Standard

As a general rule, "a party may obtain discovery of any non-privileged matter that is relevant to a claim or defense of any party." *Jones v. Hirschfeld,* 219 F.R.D. 71, 74 (S.D.N.Y.2003) (citing Fed.R.Civ.P. 26(b)(1)). Where a party has failed to respond to a discovery request, the party seeking discovery, "upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery ...." Fed.R.Civ.P. 37(a). A motion to compel documentary discovery may be made under Rule 37 "if a party fails to make a disclosure required by Rule 26(a)." Fed. R.Civ.P. 37(a)(2)(A). Rule 37 also permits a party to move to compel deposition testimony "if a deponent fails to answer a question propounded or submitted under Rules 30 or 31 ...." Fed.R.Civ.P. 37(a)(2)(B).

Motions to compel brought pursuant to Fed.R.Civ.P. 37 "are entrusted to the sound discretion of the district court." *United States v. Sanders,* 211 F.3d 711, 720 (2d Cir.2000); *accord In re Fitch, Inc.,* 330 F.3d 104, 108 (2d Cir.2003). This principle "is in keeping with the traditional rule that '[a] trial court enjoys wide discretion in its handling of pre-trial discovery ....' " *In re*

---

**2.** The BCC Report is, according to the NYBOT Defendants, an analytic document prepared by the NYBOT Compliance Department for purposes of the NYBOT Business Conduct Committee's assessment as to whether to take disciplinary action against an individual. The NYBOT Defendants acknowledge that, "[w]hile some of the facts underlying this report are arguably re-

lated to this action, all the trading records and other factual information underlying the BCC Report already have been produced to Plaintiffs." (N.Y.BOT Defs. Opp. Mem. at 2–3.) They further assert that "the disciplinary proceeding to which the BCC Report relates is not yet completed." (*Id.* at 3; *see also* Affidavit of Howard R. Hawkins, dated June 16, 2004, at ¶ 4.)

*Fitch,* 330 F.3d at 108 (quoting *In re DG Acquisition Corp.,* 151 F.3d 75, 79 (2d Cir. 1998) (internal quotation marks omitted)).

### The Discovery Sought Is Not Protected by an Absolute Privilege

Section 8c(a)(2) of the CEA provides that where an exchange has suspended, expelled, or disciplined an individual, or denied access by the individual to the exchange, the exchange

> shall make public its findings and the reasons for the Exchange action in any such proceeding, including the action taken or the penalty imposed, but shall not disclose the evidence therefore, except to the person who is suspended, expelled, or disciplined, or denied access, and to the Commission.

7 U.S.C. § 12c(a)(2).

The only case identified by the parties or by the Court's own research that addresses the relevant provision of the CEA in depth is *Apex Oil Co. v. DiMauro,* 110 F.R.D. 490 (S.D.N.Y.1985). In *Apex Oil,* the plaintiff alleged that the New York Mercantile Exchange ("NYMEX") had conspired with numerous dealers and traders in petroleum products to manipulate, for their own profit, the price and availability of a certain type of heating oil, thereby causing the plaintiff injuries. *See Apex Oil,* 110 F.R.D. at 492. During a deposition, a witness disclosed that NYMEX had conducted an investigation into the events that occurred during the relevant period and that the investigation covered matters such as possible collusion and price manipulation. *See id.* The witness also disclosed the existence of at least one internal report prepared by NYMEX in connection with the investigation. *See id.* In reliance on Section 8c(1) of the CEA,[3] NYMEX's counsel instructed the witness not to disclose information relating to the investigation. *See id.* The *Apex Oil* plaintiff moved to compel disclosure of both the investigative reports and testimony pertaining to the investigation. *See id.* NYMEX opposed the motion, contending that the protection of its investigatory materials was necessary to encourage

both members and non-members of the Exchange to cooperate with its internal investigations. *See id.* at 496.

As an initial matter, the *Apex Oil* court concluded that Section 8c(1) does not appear to apply where an investigation has not resulted in a disciplinary proceeding, explaining that,

> As written, the non-disclosure provision of section 8c is limited to "the evidence" on which an exchange bases its decision to suspend, expel, discipline or deny access to a member of the exchange following a disciplinary proceeding. It therefore does not appear to apply where an investigation has been undertaken but no proceeding instituted or where a proceeding is commenced but then terminated without a decision to impose some form of sanction against the member.

*Id.* at 493 (footnote omitted). "Were it otherwise, the provision would presumably have prohibited the disclosure of any information of evidence gather in the course of an investigation." *Id.* at 493 n. 2. As the record before the *Apex Oil* court did not contain any evidence that a disciplinary proceeding had been instituted, much less that a disciplinary proceeding had resulted in any disciplinary action by NYMEX, the court concluded that NYMEX "has not established that section 8c would bar disclosure of investigatory materials even if it were read to create an absolute privilege . . . ." *Id.* at 494.

The court proceeded to hold that, even if the relevant section of the CEA applied to investigatory materials regardless of whether a formal proceeding had been undertaken, "no absolute privilege could reasonably be inferred from the statute." *Id.* The provision in question, as the court noted,

> [R]equires [NYMEX] to *"make public* its findings and the reasons for the exchange action in any such proceeding . . ." but directs that it *"not disclose* the evidence therefor . . . ." 7 U.S.C. § 12c(1)(B) (emphasis added). The words "not disclose" are fairly construed as the converse of the

**3.** In 1992, Section 8c of the CEA was amended, whereby former Section 8c(1)(B) became current Section 8c(a)(2). *See* Futures Trading Practices Act of 1992, Pub.L. 102–546, § 206a(2)(A) (1992).

term "make public"—that is, [NYMEX] is not to make public the evidence on it based its decision, although it is to make public both the decision and the reasons for it. So viewed, the words "not disclose" do not appear to address the question of discoverability of the investigatory materials in civil litigation; [NYMEX] is prohibited from making evidence public, but this is not tantamount to disclosure by [NYMEX] to a litigant, particularly in view of the availability of protective orders designed to prevent public access to the information in question. As one court recently observed in connection with another provision of the Act, "statutes prohibiting general publication do not prohibit judicial discovery." *Friedman v. Bache Halsey Stuart Shields, Inc.,* 738 F.2d 1336, 1344 (D.C.Cir.1984). *Accord, e.g., Freeman v. Seligson,* 405 F.2d 1326, 1348, 1351 (D.C.Cir.1968).

*Id.* Based on a review of the pertinent legislative history, the court concluded that congressional "intent was to permit disclosure, where appropriate, in civil litigation." *Id.* (observing that the "legislative history of this provision squarely contradicts the claim of [NYMEX] that section 8c constitutes an absolute bar to discovery").

By its express language, Section 8c(a)(2) of the CEA does not appear to apply here, insofar as the record does not demonstrate that the investigations at issue have resulted in a disciplinary action or other action by the NYBOT or any of the NYBOT Defendants. *See Apex Oil,* 110 F.R.D. at 493. Moreover, even if Section 8c(a)(2) applied where, as here, an investigatory proceeding has been undertaken but has yet to result in any disciplinary or similar action, it is not immediately apparent whether the possible deposition testimony of Goodwin or White, Goodwin's alleged notes, or the BCC Report itself, which the NYBOT Defendants have termed "an analytic and evaluative document" (N.Y.BOT Defs. Opp. Mem. at 2), properly may be considered "evidence" subject to the CEA's limitation on disclosure. 7 U.S.C. § 12c(a)(2) (distinguishing between the "findings and the reasons for the Exchange action," which shall be made public, and "the evidence therefore," which shall not be disclosed). These issues need not be resolved, however, as the NYBOT Defendants do not press the notion that Section 8c(a)(2) creates an absolute privilege but instead contend that they are entitled to protection under a qualified privilege articulated in *Apex Oil.*

### The BCC Report and Related Testimony Are Protected, in Part, by a Qualified Investigatory Privilege

In *Apex Oil,* the court noted that, while the relevant section of the CEA did not establish an absolute privilege,

> [NYMEX] may be entitled to a more limited form of protection for the investigatory materials at issue here. Both the statutory authority previously referred to and certain policy considerations militate in favor of protecting the investigatory process of the Exchange from routine scrutiny by a litigant absent a showing of need by the party for the information.

*Apex Oil,* 110 F.R.D. at 496. The policy considerations alluded to by the court include NYMEX's assertion that protection of investigatory materials is necessary to encourage both members and non-members of NYMEX to cooperate with internal investigations, a "type of concern [that] has repeatedly been recognized by the courts in protecting civil as well as criminal law-enforcement investigatory files from civil discovery." *Id.* "In sum," the court concluded, "the information in question is entitled to protection absent a showing of need by plaintiff." *Id.* at 497. The court found the plaintiff's showing inadequate, observing that the plaintiff had been afforded full discovery of factual information from NYMEX and that the investigation materials sought were not themselves the subject of the plaintiff's claims. *See id.* at 497–98. Moreover, the plaintiff, in the court's view, had not made a compelling showing that the information sought was sufficiently necessary to the plaintiff's case so as to outweigh NYMEX's competing interest in preventing disclosure of the information. *See id.* at 498.

The *Apex Oil* court is not alone in its determination that investigatory materials related to an ongoing disciplinary proceeding by a non-governmental entity may be entitled to a limited form of protection that may

only be overcome by an adequate showing of a litigant's need for such information. In *Ross v. Bolton,* 106 F.R.D. 22 (S.D.N.Y.1985), the court denied a motion to compel disclosure of certain investigatory materials by the National Association of Securities Dealers ("NASD") in connection with a civil action alleging trading misconduct.[4] Recognizing the "strong public policy in maintaining the integrity of effective industry self-regulation," the court explained that

> This interest would clearly be undermined by making NASD files fair game for any of the thousands of private securities fraud litigants across the country who wish to shortcut their own discovery efforts and instead to reap the benefits of the [NASD's] ongoing, statutorily governed work.

*Ross,* 106 F.R.D. at 24. Nonetheless, the court stated that "[a]gainst this strong interest is balanced the need of the parties to obtain information relevant to their lawsuit." *Id.* After weighing the competing interests, the court concluded that the movants had not made a showing of sufficient need for the discovery sought and held that disclosure would be limited to information central to the movants' claims and not available from any other source. *See id.* at 24–25.

In *Davis v. Coopers & Lybrand,* No. 90 Civ. 7173, 1992 WL 159504 (N.D.Ill. June 25, 1992), the court upheld a magistrate judge's ruling that certain transcripts of the meetings of the Chicago Board of Trade's Business Conduct Committee need not be produced to plaintiffs, observing that *Apex Oil* and *Ross,* "the very authorities relied on by plaintiffs[,] ... confirm that materials generated in the course of such investigations and disciplinary proceedings (and matters within the scope of 7 U.S.C. § 12c(1)(B)) are discoverable in litigation such as this *only* on a showing of particularized need," and concluding that the requisite showing of need had not been satisfied. *Davis,* 1992 WL 159504, at *1 (emphasis in original).

Similarly, the court in *S.E.C. v. Thrasher,* No. 92 Civ. 6987(JFK), 1995 WL 46681 (S.D.N.Y. Feb. 7, 1995), explained that investigatory materials of non-governmental self-regulating bodies such as the Chicago Board of Exchange and the New York Stock Exchange "may, in some respects, be subject to a qualified privilege upon competent proof of harm if the documents are disclosed." *Thrasher,* 1995 WL 46681, at *12 (concluding that the Chicago Board of Exchange's objections to production were "justified because production of investigative reports might well compromise the ability of the [Exchange] to carry out its statutorily assigned function as a self-regulatory organization"), *aff'd,* 1995 WL 456402, at *17 (S.D.N.Y. Aug. 2, 1995).

More recently, in *In re Adler, Coleman, Clearing Corp.,* No. 95–08203(JLG), 1999 WL 1747410 (Bankr.S.D.N.Y. Dec. 8, 1999), the court noted that the "[p]remature disclosure of factual information to the target of a pending NASD investigation could impair the NASD's ability to investigate its members, thereby defeating the important 'public interest in maintaining the integrity of effective industry self-regulation'" and that the risk run by "prematurely disclosing the strategy driving an ongoing investigation" was significant. *In re Adler, Coleman,* 1999 WL 1747410, at *5 (quoting *Ross,* 106 F.R.D. at 23). The court ultimately declined to compel testimony from a NASD employee, even where his testimony was sought only as to factual matters and not as to either his opinion or analysis. Explaining that the investigatory privilege "applies to both investigative files and testimony concerning their contents," *id.* at *3, the court concluded that the balance of the competing interests was not in the movant's favor.

■ Where a governmental department or body such as the SEC is asserting an investigatory privilege, a specific showing must be made before the court will consider the privilege to have been asserted properly. *See, e.g., In re Sealed Case,* 856 F.2d 268, 270 (D.C.Cir.1988) (explaining that three requirements must be met by the SEC to sustain a claim of investigatory privilege: "(1) there must be a formal claim of privilege by the head of the department having control over

---

4. The NASD had agreed to produce factual data relating to the subject of its investigation but had refused to produce information representing staff analysis or opinion. *See Ross,* 106 F.R.D. at 24.

the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege.") (citing *Black v. Sheraton Corp. of America*, 564 F.2d 531, 542–43 (D.C.Cir. 1977); *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341–42 (D.C.Cir.1984)). The party claiming the privilege "has the burden to establish its existence." *Friedman*, 738 F.2d at 1341. Where, however, a non-governmental self-regulatory entity has asserted the investigatory privilege on the basis of the public interest in preserving the ability of self-regulatory bodies to function effectively these requirements appear to have been applied less rigorously, if at all. *See, e.g., In re NASD*, No. 96–0518, 1996 WL 406826, at *2 (E.D.La. July 18, 1996) (weighing the NASD's assertion of privilege against the movants' need without addressing any the factors identified in *Sealed Case* concerning the adequacy of the assertion of privilege); *Ross*, 106 F.R.D. at 24 (reaching the merits and balancing the competing interests without evaluating the sufficiency of the NASD's claim of privilege); *cf. In re Adler, Coleman*, 1999 WL 1747410, at *3 (reciting the prerequisites established in *Sealed Case* but proceeding to a determination without explicitly considering whether the requirements had been met). Plaintiffs have not contested the adequacy of the NYBOT Defendants' assertion of privilege under *Friedman* or *Sealed Case* here.

▮ In order to obtain the information sought under circumstances such as those presented here, the party seeking discovery must establish a need for the privileged information that outweighs the competing interest in non-disclosure. The party seeking discovery may not rely on unsupported allegations in order to establish a particularized need for the information sought. Such allegations are "inadequate to overcome the important public interest served by maintaining the confidentiality of . . . investigative files." *In re Adler, Coleman*, 1999 WL 1747410, at *6. Nor will speculation as to the "mere possibility" of useful information be deemed sufficient to overcome the protection for investigative files; "[s]peculation of this sort is simply inadequate to justify overcoming the presumptive protection accorded the investigative files." *Apex Oil*, 110 F.R.D. at 498. Nonetheless, where the limited information sought by a party seeking discovery from a non-governmental regulatory body's investigatory files is "crucial" to the party's cause of action, it may outweigh the strong public interest in maintaining the confidentiality of investigatory materials. *See In re NASD*, 1996 WL 406826, at *2–3 (determining that parties defending against a libel action would be permitted to inspect a redacted copy of a single document from the NASD's investigatory files where the libel action concerned statements published about the substance of a NASD complaint and the defendants were seeking to establish the substantial truth of the statements published).[5]

In the instant action, the NYBOT Defendants have asserted that the BCC Report and related testimony are protected by the investigatory privilege, and that disclosure of the BCC Report and related testimony would cause injury to NYBOT and would be contrary to the public policy that favors keeping ongoing investigations confidential. Like NYMEX and the NASD, NYBOT is a self-regulating organization and its ability to police and investigate its members' trading activities depends on its ability to elicit cooperation from its members, which in turn de-

---

5. Plaintiffs cite to a list of ten factors to be considered in balancing the need of the litigant with the interest in non-disclosure of investigative materials. These factors include

[T]he extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; . . . the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; . . . whether the information sought is factual data or evaluative summary; . . . whether the information sought is available through other discovery or from other sources; and . . . the importance of the information sought to the plaintiff's case. *Friedman*, 738 F.2d at 1342–43 (quoting *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D.Pa. 1973)). Many of the factors identified in *Friedman* parallel the elements weighed by the courts in *Apex Oil, Ross,* and their progeny. Accordingly, the discussion here will not explicitly track the *Friedman* analysis.

pends on its ability to protect those members' privacy. If the NYBOT Defendants were required to disclose the BCC Report and related testimony, not only would the confidentiality of the ongoing disciplinary proceeding to which the BCC Report relates be compromised, but NYBOT would face significant difficulties conducting future investigations.[6]

■ Contrary to Plaintiffs' suggestion, the NYBOT Defendants have not waived the investigatory privilege as to the pending disciplinary action by relying on Goodwin's sworn statement concerning his involvement since 2000 in "a number of investigations and analyses of the trading in the P–Tech that led to the events of May 2000." (Lacher Decl., Exh. A, at ¶ 4.) The Goodwin Affidavit makes no reference to the BCC Report nor, according to the NYBOT Defendants, does the substance of the Goodwin Affidavit reveal details of any underlying investigation related to the BCC Report. Even if the investigation to which the BCC Report relates were one of the "number of investigations" referenced in the Goodwin Affidavit, however, Plaintiffs have not pointed to any authority demonstrating that the qualified investigative privilege may be waived by reference to the mere existence of an investigation.

Further, and notwithstanding Plaintiffs' adamance in this regard, this Court's earlier ruling, based in part on information presented in the Goodwin Affidavit, that Plaintiffs were entitled to discovery on their claims, see May 2003 Opinion, 265 F.Supp.2d at 261, does not preclude the NYBOT Defendants from asserting the privilege at issue here or otherwise guarantee Plaintiffs limitless access to the NYBOT Defendants' investigative material. Accordingly, Plaintiffs must establish a particularized need sufficient to overcome the "strong public interest in maintaining the integrity of effective industry self-regulation," *Ross,* 106 F.R.D. at 23, before they may be entitled to the BCC Report and related testimony from Goodwin and White.

Plaintiffs argue that the discovery in question is necessary to assist them in uncovering "more facts" to support the allegations contained in the amended consolidated complaint, including facts related to the NYBOT Defendants' purported knowledge of the settlement price manipulation asserted in the amended consolidated complaint and the ulterior motive behind their alleged involvement in that manipulation. (Pls. Reply Mem. at 1.) They further suggest that investigative materials related to the alleged manipulation of P–Tech settlement prices by Norman Eisler, an individual whom Plaintiffs believe to be the subject of the BCC Report and related investigation, are "crucial to uncover facts related to [the NYBOT] Defendants' liability" (*id.* at 4) and the investigative materials sought relate directly to the cover-up of the P–Tech settlement price manipulation alleged in their amended consolidated complaint.

■ Mere speculation that the discovery sought would help to uncover facts related to a defendant's liability is not sufficient to warrant compelling discovery, see *Apex Oil,* 110 F.R.D. at 498, nor is the suggestion that the materials relate to a purported cover-up adequate to outweigh the public interest favoring non-disclosure where, as here, the investigation is not itself the subject of Plaintiffs' claims contained in the amended consolidated complaint. See *id.* at 497 (declining to find that routine disclosure of investigative materials was warranted where the defendant exchange was alleged to have participated in a price manipulation conspiracy and to have knowingly or negligently failed to enforce its own rules with regard to the manipulation but the defendant exchange's subsequent investigation was not a subject of the plaintiff's claims).

Plaintiffs finally urge that discovery must be compelled here because they have no alternative means of obtaining the information sought concerning the results of the NYBOT Defendants' internal investigation and analy-

---

**6.** Plaintiffs have expressed skepticism that the NYBOT Defendants' investigation is still pending, and suggest that the NYBOT Defendants are intentionally stalling their investigation in order to avoid discovery obligations in this action. Such speculation, however, does not provide sufficient basis for doubting the NYBOT Defendants' representation that the investigation underlying the BCC Report is ongoing.

sis, information which they claim is solely within the knowledge of the NYBOT Defendants. Plaintiffs' need is further amplified, they assert, by the destruction of all of NYBOT's files prepared prior to September 11, 2001 as a result of the events of that date. In opposition, the NYBOT Defendants state that Plaintiffs have been afforded full discovery on the issues relevant to this action, with the exception of those specific items and testimony at issue in this motion, and have been provided with all relevant trading records from the time period as well as all materials that formed the basis for the Goodwin Affidavit. The NYBOT Defendants observe that, while "other records of the 2001 disciplinary investigation were destroyed on 9/11, all P–Tech trading records survived and have been produced to the Plaintiffs." (N.Y.BOT Defs. Opp. Mem. at 9 n. 10.) Although Plaintiffs dispute the suggestion that they have been afforded full discovery, they do not deny receipt of the materials referred to by the NYBOT Defendants.

■■■ A party's need for information that is both central to the party's claims or defenses and available from no other source can outweigh the public interest in protecting an investigation conducted by a self-regulating industry. *See, e.g., In re NASD,* 1996 WL 406826, at *2; *Ross,* 106 F.R.D. at 24–25. However, such a need may only overcome the articulated public interest where the party is seeking limited and specific information. *See In re NASD,* 1996 WL 406826, at *2; *Ross,* 106 F.R.D. at 24–25. In light of the destruction of certain investigatory records due to the events of September 11, 2001, and given the limited nature of the discovery sought insofar as Plaintiffs' request may be restricted to the findings of the internal investigation, Plaintiffs' need for factual information contained in the BCC Report outweighs the public interest in protecting the NYBOT Defendants' ongoing investigation.

Accordingly, the BCC Report shall be produced to Plaintiffs, but may be redacted to protect against disclosure of any purely analytical or opinion-related passages contained therein. While factual or statistical data underlying an investigation may be discoverable under certain circumstances, "analyses or opinions drawn from such material" are typically granted greater protection, *see, e.g., Ross,* 106 F.R.D. at 24, and Plaintiffs have not demonstrated a need for the purely analytic portions of the BCC Report sufficient to outweigh the public interest against disclosure. If, as the NYBOT Defendants suggest, "all the trading records and other factual information underlying the BCC Report already have been produced to Plaintiffs" (N.Y.BOT Defs. Opp. Mem. at 2–3), the production of the BCC Report, redacted to protect against disclosure of only those passages that contain analyses, opinions or evaluations of data compiled in the course of the underlying investigation, is unlikely to undermine or otherwise compromise the ongoing investigation, particularly if the BCC Report is produced pursuant to a protective order.

Notwithstanding the foregoing, the testimony of Goodwin and White—insofar as it relates to the substance of the ongoing investigation to which the BCC Report relates—will not be compelled. In light of the production of the BCC Report, Plaintiffs' need for the testimony of Goodwin and White as to purely factual matters underlying the investigation to which the BCC Report relates is less pronounced and their stated need for testimony as to analysis and opinion remains insufficient to overcome the public interest in protecting the internal processes of ongoing investigations and disciplinary proceedings.

### Plaintiffs Are Entitled to Limited Deposition Testimony from Goodwin and White and Limited Documentary Discovery

The NYBOT Defendants have indicated that they may be prepared, under certain circumstances, to produce White for deposition and have not asserted privilege with regard to White's testimony generally but only as to his testimony concerning the pending disciplinary proceeding and investigation to which the BCC Report relates. Accordingly, a deposition of White may be noticed. White need not testify as to the pending investigation and possible disciplinary action or matters otherwise privileged.

It is not clear from the record whether Goodwin has already testified fully with regard to those investigations referenced in the Goodwin Affidavit and not related to the

pending disciplinary matter or otherwise privileged. As with White, the NYBOT Defendants have indicated their willingness to reopen Goodwin's deposition under appropriate circumstances. Accordingly, Goodwin may be recalled to testify with regard to any investigations other than the pending investigation and possible disciplinary action or matter otherwise privileged.

Plaintiffs also seek any notes by Goodwin relevant to the P–Tech investigations, as Goodwin indicated at his deposition that it is "possible" (Lacher Decl., Exh. C, at 113) he has such notes. The NYBOT Defendants assert that they have produced White's notes (*see* NYBOT Defs. Opp. Mem. at 14), but do not address whether any relevant notes by Goodwin exist and have yet to be produced. Accordingly, any of Goodwin's notes relevant to the P–Tech investigations not previously produced, not related to the pending investigation, and not otherwise privileged shall be produced to Plaintiffs.

As the NYBOT Defendants have asserted that Plaintiffs have already been afforded full discovery aside from those specific items at issue in this motion, Plaintiffs' application to compel production of any other "relevant investigatory documents" (Pls. Mem. at 2) is denied.

### Plaintiffs Are Not Entitled to Production of the Compliance Manuals

Plaintiffs seek to compel production of any NYBOT compliance manuals detailing investigative procedures. The NYBOT Defendants argue that disclosure of such internal procedures "plainly would hamper future Exchange investigations." (N.Y.BOT Defs. Opp. Mem. at 10 n. 13.) They further submit that any compliance manuals in effect during the period August 1999 through May 2000 were destroyed as a result of the events of September 11, 2001, and that the compliance manual currently in place was developed subsequent to the commencement of this action and is thus not relevant. Plaintiffs dispute this latter point, urging that the NYBOT Defendants have conducted ongoing investigations into the manipulation of P–Tech settlement prices after September 11, 2001, including the investigation to which the BCC Report relates, and that these ongoing inves-

tigations render the current compliance manual relevant.

While the strong "public interest in maintaining the integrity of effective industry self-regulation," *Ross,* 106 F.R.D. at 23, justifies the limited protection for investigative files relating to ongoing investigations, the rationale for this protection rests in great part on the notion that protection is necessary to encourage cooperation with internal investigations in general, *see, e.g., Apex Oil,* 110 F.R.D. at 496, and to prevent the premature disclosure of factual information or investigative strategy related to a particular ongoing investigation. *See, e.g., In re Adler, Coleman, Clearing Corp.,* 1999 WL 1747410, at *5. The NYBOT Defendants have not demonstrated why this rationale ought to extend to compliance manuals seemingly unrelated to the substance of an ongoing investigation, nor have they suggested, much less established, what type of harm might result as to future investigations if compliance manuals were produced to Plaintiffs, particularly if such manuals were produced subject to a protective order.

 Accordingly, the NYBOT Defendants have not established that NYBOT's compliance manuals are protected from discovery by the qualified investigatory privilege. Nonetheless, production of the compliance manual currently in place will not be compelled here, as Plaintiffs have not demonstrated the manual's relevance to these proceedings. The fact that the manual presently in use may have governed the NYBOT Defendants' investigations since September 11, 2001, including the investigation related to the BCC Report, does not render the manual relevant, since the investigations themselves and the manner in which they are conducted are not the subject of Plaintiffs' claims in this action.

### Conclusion

Plaintiffs' motion to compel discovery is granted in part and denied in part as set forth above. The parties shall comply with those aspects of this opinion and order grant-

ing Plaintiffs' motion within forty-five (45) days of entry of the opinion and order.

It is so ordered.

